UNITED STATES of America, Appellee,

v.

Michael D. THOMPSON, Appellant.

No. 00–3119.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 18, 2001.

Decided Feb. 15, 2002.

Adam H. Kurland, appointed by the court, argued the cause for the appellant.

John K. Han, Assistant United States Attorney, argued the cause for the appellee. Kenneth L. Wainstein, Acting United States Attorney at the time the brief was filed, and John R. Fisher and Roy W. McLeese, III, Assistant United States Attorneys, were on brief for the appellee.

Before: GINSBURG, Chief Judge, HENDERSON, Circuit Judge, and WILLIAMS, Senior Circuit Judge.

Opinion for the court filed by Circuit Judge HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

Michael D. Thompson was convicted on one count of unlawful distribution of fifty grams or more of cocaine base in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(a)(3). He appeals, contending that the district court erroneously excluded evidence and erroneously charged the jury; he also challenges the sufficiency of the evidence to support his conviction. We affirm the district court's rulings and uphold his conviction.

## I.

On October 22, 1997 Detective David Dessin of the Metropolitan Police Department (MPD) and a confidential informant (Robert) approached Mitchell Douglas (Douglas) to buy cocaine base. Gov't App. Tab B, at 6–7. Dessin was working as an undercover agent for the High Intensity Drug–Trafficking Area Task Force, a joint task force of the MPD and the United States Bureau of Alcohol, Tobacco and Firearms. 8/29/00 Tr. 5–6. Douglas agreed to sell but told Dessin that he would complete the transaction—$1500 for 62 grams of cocaine base—the next day at 5:00 p.m. in a nearby Popeye's Chicken parking lot. *Id.*

On October 23, 1997 Dessin waited in an unmarked police car, a Lexus, in the restaurant parking lot. Shortly after Dessin arrived, Robert drove into the parking lot and parked next to Dessin. Dessin did not expect to see him because Robert had earlier told him that he could not participate in the bust. 8/29/00 Tr. 14. Dessin told him to get into the Lexus so that the targets would not become suspicious of his separate arrival. *Id.* at 15.

At approximately 5:10 p.m., an unknown person later identified as appellant Thompson approached Dessin and asked, "Are you Rob's boy?" 8/29/00 Tr. 16. Dessin responded, "Yeah." *Id.* Thompson then

stated, "Mitch told me to give you this." *Id.* Dessin told Thompson to get into the car. Thompson opened the driver's side rear door and sat behind Dessin. Dessin asked him, "Do you have that joint?" *Id.* at 18. Thompson responded by handing him a large Burger King cup with a lid on it. The cup was later shown to have contained cocaine base. Dessin then gave Thompson a bundle of money in exchange. Thompson asked, "What's this?" Dessin responded, "15" (meaning $1500). *Id.* at 25. Thompson asked, "Are you straight?", to which Dessin replied, "I'm straight." *Id.* Thompson got out of the car and walked out of the parking lot.

Thompson and Douglas were subsequently indicted on various drug charges. Douglas was charged in all four counts of the indictment, which included two separate acts of distribution and two telephone facilitation counts. Thompson was named in count four only, which charged both Thompson and Douglas with unlawful distribution of more than 50 grams of cocaine base on or about October 23, 1997. Douglas pleaded guilty and was ultimately sentenced to 70 months' imprisonment.

Thompson proceeded to trial as the sole defendant on count four of the indictment. Following a three-day jury trial, Thompson was found guilty of unlawful distribution of fifty grams or more of cocaine base under 21 U.S.C. § 841(a)(1), 841(b)(1)(a)(3). On November 14, 2000 the district court sentenced Thompson to 188 months' imprisonment, followed by a four-year term of supervised release.

## II

### A. *Excluded Testimony*

At trial, Thompson's defense was that he lacked the requisite mens rea because he did not know the cup he delivered to Dessin contained cocaine base. Thompson

testified that before the transaction with Dessin, Douglas asked him to deliver a Burger King cup that Douglas said contained $2600 to a Lexus in the Popeye's Chicken parking lot. Thompson assumed that the money was to pay a gambling debt because Douglas was a "compulsive gambler and owes people at times." 8/30/00 Tr. 21. The government objected to Douglas's statements as hearsay. The district court overruled the objection, explaining that the statements were offered for the non-hearsay purpose of "prov[ing] ... the defendant's state of mind." 8/30/00 Tr. 12.[1] Thompson also tried to testify about what Douglas told him immediately *after* the event when he returned with the $1500 Dessin had given him. 8/30/00 Tr. 23. According to Thompson, the evidence was critical to his defense because it explained the otherwise unlikely sequence of events, that is, that Thompson received $1500 in exchange for what he thought was in the cup—money to pay a gambling debt. Appellant's Br. at 8. Nevertheless the district court sustained the government's hearsay objection to any testimony regarding Douglas's post-transaction statements.

◼ On appeal, Thompson argues that Douglas's post-transaction statements, like Douglas's pre-transaction statements, were offered to show Thompson's state of mind and therefore should not have been excluded as hearsay.[2] Hearsay is an out-of-court statement offered for the truth of the matter asserted. Fed.R.Evid. 801(c). An out-of-court statement that is offered to show its effect on the hearer's state of mind is not hearsay under Rule 801(c). *See United States v. Baird,* 29 F.3d 647, 653 (D.C.Cir.1994) (district court improperly excluded evidence bearing on officer's state of mind as hearsay); *United States v. Detrich,* 865 F.2d 17, 21 (2d Cir.1988) (exclusion of evidence of defendant's state of mind as hearsay reversible error). Regardless of the actual contents of the closed cup, the jury might have been able to draw from Douglas's statements an inference as to Thompson's guilty knowledge *vel non* of the cup's contents. *If* Thompson offered Douglas's post-transaction statements only as they might tend to bear on his state of mind, the testimony would not have been hearsay.[3]

◼ Rule 103(a)(2) of the Federal Rules of Evidence, however, provides that an error may not be predicated upon a ruling excluding evidence unless "the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." Fed.R.Evid. 103(a)(2). The proponent of excluded evidence must alert the trial court, in some fashion, to the substance of his proposed testimony. *See*

1. The district court also offered to give a limiting instruction that the testimony could be "considered only with reference to the defendant's state of mind and [ ] not ... as evidence of the truth of what was, in fact, stated to him." 8/30/00 Tr. 12.

2. We review the district court's evidentiary rulings for abuse of discretion. *See United States v. Warren,* 42 F.3d 647, 655 (D.C.Cir. 1994).

3. On appeal, the government acknowledges that Douglas's statements would not be hearsay if offered to show Thompson's state of mind. Nonetheless, it contends the state-

ments were properly excluded because they were "clearly irrelevant." *See* Appellee's Br. at 12. It suggests that statements made by Douglas to Thompson minutes *after* the transaction are irrelevant because they do not ascertain Thompson's state of mind *at the time* of the transaction. *Id.* The fact that the statements occurred immediately after the event does not automatically mean that they were not probative of the defendant's intent. Douglas's post-transaction statements to Thompson could tend to make Thompson's knowledge of what was in the cup "more or less probable." *See* Fed.R.Evid. 401.

*United States v. Lavelle,* 751 F.2d 1266, 1272 (D.C.Cir.1985) (defendants's failure to make known basis for seeking to admit excluded evidence barred appellate review).[4] But defense counsel simply attempted unsuccessfully to rephrase his question and then finally moved on without apprising the trial court of the substance of the excluded evidence. 8/30/00 Tr. 22–23.[5] Because Thompson did not proffer his intended response or otherwise inform the court of the nature of the evidence sought to be adduced or, at minimum, the purpose for which the evidence was being offered, we are substantially hindered in reaching the conclusion that the district court erred. *See United States v. Wright,* 783 F.2d 1091, 1098–99 (D.C.Cir.1986) (exclusion of threatening phone call as hearsay not error under Rule 103 because defendant failed to inform district court of nature of testimony); *see also Chedick v. Nash,* 151 F.3d 1077, 1084 (D.C.Cir.1998) (plaintiff's appeal of exclusion of emotional distress evidence foreclosed because of her failure to inform trial court of legal basis of admissibility).

Even if a party fails to comply with Rule 103(a), review is nonetheless available under the "plain error" provision of Rule 103(d) which states, "[n]othing in this rule precludes taking notice of plain error affecting substantial rights although they were not brought to the attention of the court." Fed. Evid. R. 103(d). Under the plain error standard, "before an appellate court can correct an error not raised at trial, there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.'" *United States v. Webb,* 255 F.3d 890, 897 (D.C.Cir.2001) (quoting *Johnson v. United States,* 520 U.S. 461, 466–67, 117 S.Ct. 1544, 1548–49, 137 L.Ed.2d 718 (1997) (quotation omitted)). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* (quoting *Johnson,* 520 U.S. at 467, 117 S.Ct. at 1549). Under this stringent standard, the district court's decision to exclude the post-event testimony did not constitute plain error affecting substantial

---

**4.** In *Lavelle,* 751 F.2d at 1272 n. 7, the court cited approvingly the Fifth Circuit decision in *United States v. Winkle,* 587 F.2d 705 (5th Cir.), *cert. denied,* 444 U.S. 827, 100 S.Ct. 51, 62 L.Ed.2d 34 (1979), which established that appellate review of a trial court's exclusion of evidence requires that an offer of proof be made at trial. *Winkle,* 587 F.2d at 710; *see also Stockstill v. Shell Oil Co.,* 3 F.3d 868, 872–73 (5th Cir.1993), *cert. denied* 510 U.S. 1197, 114 S.Ct. 1307, 127 L.Ed.2d 658 (1994).

**5.** The relevant discussion at trial went as follows:

Q: [Defense Counsel] Then what happened after you asked him, "Are you all right?" You said, "Are you straight?" What happened?
A: [Thompson] I got out of the car, and I left. I went back across the street towards Mitchell Douglass. I was kind of confused because I couldn't understand why this guy was giving me money for money. When I got across the street, my first intention was to ask Mitchell what was in that cup. But when I got to him, he was sitting on the railing. He looked like he was a little upset about something. I went over to him. I gave him the money. And I sat on the rail beside him. And he told me that—
[Prosecution] Objection, your Honor. Hearsay.
The Court: Sustained.
Q: [Defense Counsel] What did you do with the money that you took from the person in the car?
A: I gave it to Mitchell.
Q: Then what happened?
A: Mitchell told me that—
[By the Prosecution] Objection, your Honor.
The Court: Sustained.
Q: [Defense Counsel] What did you hear Mitchell say after you gave him the money?
[Prosecution] Objection, your Honor.
The Court: Sustained.
9/30/00 Tr. 22–23.

rights because it did not "gravely hamper" Thompson's presentation of his mens rea defense. *Wright,* 783 F.2d at 1099 (erroneous exclusion not plain error where duress defense nonetheless presented). Reviewing Thompson's testimony, we note that he did testify that Douglas told him before the transaction that the cup contained money and that he was "confused" by Dessin's delivery of $1500 in exchange. In the absence of a proffer showing otherwise, it appears the excluded testimony was cumulative. In addition, the evidence of Thompson's guilt was fairly strong. Most of the facts supporting his conviction were undisputed. *See supra* 1045 – 47. The only disputed issue at trial was whether Thompson knew that the cup contained cocaine base which, based on the evidence before it, the jury could reasonably find that he did. Thompson thus incurred no significant prejudice from the erroneous ruling. We conclude therefore that the exclusion of the evidence did not constitute plain error and, accordingly, we affirm the district court's ruling.

### B. *Aiding and Abetting Instruction*

Thompson next argues that the trial court erred by giving an aiding-and-abetting jury instruction that was unsupported by the evidence. Thompson further contends that the erroneous instruction encouraged the jury to convict him without finding that he possessed the requisite criminal knowledge. We conclude that the instruction was proper or, at worst, harmless error.

■■■■ At trial, Thompson objected to the aiding-and-abetting instruction on the ground that the government failed to prove that Thompson and Douglas had a "shared intent" to commit the crime. 8/30/00 Tr. 79. Thompson acknowledges that his challenge to the aiding-and-abetting instruction on appeal is based on a different ground from the one he asserted at trial. *See* Appellant's Br. at 13. Objection to a jury instruction is properly made only if it is couched in terms that alert the trial court to the substance of the party's position. *See United States v. Breedlove,* 204 F.3d 267, 270 (D.C.Cir.2000). Because Thompson failed to object on the ground he asserts on appeal, he can prevail only if the instruction given constitutes plain error. *See United States v. Halliman,* 923 F.2d 873, 885 (D.C.Cir.1991); *see also* Fed. R.Crim.P. 30; Fed.R.Crim.P. 52(b). Accordingly, we review Thompson's claim on appeal for plain error. *See Webb,* 255 F.3d at 897.

■■■■ At the outset, we believe that the trial court did not err in giving the instruction because the jury could have reasonably concluded, based on the evidence before it, that Thompson aided and abetted Douglas, the principal, in the distribution of cocaine base to Dessin. Thompson is under the misconception that because he *physically* handed the drugs to Dessin, he is the only person who could be a principal. *See* Appellant's Br. at 18.[6] Douglas, however, was the original target of the sting operation, set up the transaction with Dessin, arranged the location for the sale, provided the narcotics (and the cup to transport them), chose Thompson as his agent and was the financial beneficiary of the transaction. Under these circumstances, the jury could have reasonably found that Thompson aided and abetted

---

**6.** Thompson relies exclusively on the holding in *United States v. Martin,* 747 F.2d 1404, 1407 (11th Cir.1984), that an aiding and abetting instruction can be reversible error if there is no evidence of any person other than the defendant culpably involved in the offense. *Id.* at 1406. The Tenth Circuit, interpreting *Martin* in circumstances like those here, concluded that an aiding and abetting instruction is proper if there is evidence from which a reasonable jury could conclude that the defendant aided *someone* in committing arson. *See United States v. Yost,* 24 F.3d 99, 104 (10th Cir.1994).

the distribution committed principally by Douglas. *Cf. United States v. Edmonds*, 765 F.Supp. 1112 (D.D.C.1991) (defendant not required to personally transfer drugs to undercover agent to support cocaine distribution conviction; constructive transfer sufficient), *rev'd in part on other grounds*, 69 F.3d 1172 (D.C.Cir.1995).[7]

 Even if there were no record evidence to support an aiding-and-abetting instruction, the error would nonetheless be harmless. Thompson's complaint, namely, that the instruction "invited the jury to find Thompson guilty as an 'aider and abettor' without requiring the jury to find that [he] possessed the requisite criminal knowledge," Reply Br. 12, is without merit in view of the instructions given as well as the government's focus on the criminal state-of-mind issue. The district court first laid out the requirements for the offense of possession with intent to distribute.[8] The court then correctly advised the

jury of the requirements of aider and abettor liability, repeatedly referring to the intent element.[9] A reasonable jury would understand that to convict Thompson, whether as principal or aider and abettor, the government had to prove that he had the requisite criminal state of mind. At oral argument, Thompson emphasized that the harm to him stemmed primarily from the government's use of the instruction. We disagree. In fact, the government emphasized the criminal intent element in its closing argument. *See* 8/30/00 Tr. 93–96.[10] For the foregoing reasons, we reject Thompson's challenge to the jury charge.

## C. *Sufficiency of Evidence*

 Finally Thompson contends that his conviction should be reversed for insufficiency of intent evidence. In reviewing a conviction for sufficiency of the evidence, the court need only determine whether, after viewing the evidence in the

---

7. 21 U.S.C. § 841(a)(1) makes it unlawful "to ... distribute ... a controlled substance." "[T]o distribute" means "to deliver," and "delivery" is defined as "the actual, constructive, or attempted transfer of a controlled substance, whether or not there exists an agency relationship." 21 U.S.C. § 802(8) and (11). *See also United States v. Waller*, 503 F.2d 1014, 1015–16 (7th Cir.1974), *cert. denied*, 420 U.S. 932, 95 S.Ct. 1137, 43 L.Ed.2d 406 (1975) (rejecting defendant's argument that she did not distribute drugs because she did not physically hand them to buyer). That Douglas did not physically transfer the drugs to Dessin is of no consequence because the evidence plainly supports Douglas's role as principal in the constructive distribution of a controlled substance.

8. The court explained in part that:
The essential elements of distribution of a controlled substance, each of which the government must prove beyond a reasonable doubt, are: ... 2. That the defendant distributed the controlled substance *knowingly* and *intentionally*. This means consciously, voluntarily and on purpose, not mistakenly, accidentally or inadvertently.
8/30/00 Tr. 123 (emphasis added).

9. The court instructed the jury:

Any person, who in some way *intentionally* participates in the commission of a crime, aids and abets the principal offender.... To find that the defendant aided and abetted in committing a crime, you must find that the defendant *knowingly* associated himself with the person who committed the crime, that he participated in the crime as something *he wished to bring about,* and that he *intended* by his actions to make it succeed.... It is sufficient if you find beyond a reasonable doubt that the crime was committed by someone and that the defendant *knowingly* and *intentionally* aided and abetted the principal offender in committing the crime.
8/30/00 Tr. 124–25 (emphasis added).

10. The government quoted the text of the instruction that the jury must find beyond a reasonable doubt that the "defendant knowingly and intentionally aided and abetted the principal offender in committing the crime." 8/30/00 Tr. 93.

light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See United States v. Logan,* 998 F.2d 1025, 1030 (D.C.Cir.1993). Thompson, however, has waived his right to raise a sufficiency of the evidence claim on appeal by failing to renew his motion for judgment of acquittal at the close of all of the evidence. *See United States v. Sherod,* 960 F.2d 1075, 1077 (D.C.Cir.) (failure to renew motion for acquittal at close of all evidence means there is "nothing to review"), *cert. denied,* 506 U.S. 980, 113 S.Ct. 480, 121 L.Ed.2d 385 (1992). In *Sherod,* we endorsed an exception to the rule if declining to consider the sufficiency of the evidence on waiver grounds caused a "manifest miscarriage of justice." *Id.* (quotation omitted). Because the record is not devoid of evidence pointing to Thompson's knowledge of the cup's true contents, *cf. United States v. Spinner,* 152 F.3d 950, 956 (D.C.Cir.1998); *Patel v. Penman,* 103 F.3d 868, 878 (9th Cir.1996), his case does not fit the exception and his conviction is affirmed.

*So ordered.*