Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued February 6, 2004       Decided August 17, 2004

No. 02-3028

UNITED STATES OF AMERICA,
APPELLEE

v.

JUAN PETIS MCLENDON,
APPELLANT

————

Appeal from the United States District Court
for the District of Columbia
(No. 99cr00011–01)

————

*Kenneth D. Auerbach* argued the cause and filed the briefs for appellant.

*Mary B. McCord*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Roscoe C. Howard, Jr.*, U.S. Attorney, and *John R. Fisher*, *Thomas J. Tourish, Jr.*, and *Arvind K. Lal*, Assistant U.S. Attorneys.

————

 Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: EDWARDS, GARLAND, and ROBERTS, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*: A jury convicted defendant Juan Petis McLendon of several narcotics offenses. At trial, although the district court had barred the government from presenting testimony about the defendant's involvement with guns, a government witness testified that he had found ammunition in the defendant's bedroom. McLendon's sole contention on appeal is that the court abused its discretion in denying his motion for a mistrial following that testimony. We conclude that the court did not abuse its discretion, and we therefore affirm the defendant's conviction.

I

In January 1999, a federal grand jury in the District of Columbia indicted McLendon for the following crimes: (i) three counts of using a telephone to facilitate the distribution of cocaine base, in violation of 21 U.S.C. § 843(b); (ii) three counts of distributing 50 or more grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A); (iii) three counts of distributing 50 or more grams of cocaine base within 1000 feet of a school, in violation of 21 U.S.C. § 860(a); (iv) one count of carrying a firearm during a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1); (v) one count of assaulting and resisting a police officer, in violation of D.C. Code § 22-505(a) (1999); and (vi) one count of carrying a pistol without a license, in violation of D.C. Code § 22-3204(a) (1999).

McLendon's first trial began on February 23, 1999. It ended with the return of a partial verdict of not guilty on the firearms counts, as well as on the charge of assaulting an officer. The court declared a mistrial as to the remaining counts.

In March 1999, the grand jury returned a superseding indictment containing the remaining counts from the first indictment as well as additional violations of 21 U.S.C. §§ 843(b), 841(a)(1) and (b)(1), and 860. That case went to

trial in July 1999. It ended in a mistrial after the jury was unable to reach a verdict on any count.

A third trial — the subject of this appeal — began on January 4, 2000. That trial ended with a guilty verdict on all counts. After various procedural delays, McLendon was sentenced to a total of 235 months' incarceration on February 22, 2002.

The government's trial evidence showed that, in the spring of 1998, McLendon asked his friend Gloria Pearson to help him find customers to whom he could sell drugs. Unfortunately for McLendon, Pearson was working as a confidential informant for the United States Park Police. Pearson reported McLendon's request to the police, who recorded a telephone call in which Pearson arranged for McLendon to sell a half ounce of crack cocaine to her "girlfriend's husband" — who was, in fact, Detective Richard White. 1/6/00 Tr. at 82. On July 6, 1998, McLendon drove to a parking lot in Washington, D.C., where he met Pearson and White in White's car. There, he gave White approximately half an ounce of crack in exchange for $600. The entire transaction was videotaped by two cameras, one inside White's car and another in a nearby police van.

Following this initial transaction, McLendon started communicating directly with White. To arrange further deals, McLendon called and paged White regularly. These calls resulted in four more transactions between July 9, 1998 and September 17, 1998, in each of which McLendon gave White approximately 62 grams of crack in exchange for $1900. Each transaction took place in White's parked car, and each was taped. After the final transaction on September 17, 1998, McLendon was arrested on the scene. Later that day, the police searched McLendon's bedroom in his mother's house in Maryland and recovered, among other things, a paper bag containing crack cocaine residue, a mirror with a razor blade, a digital scale, hundreds of small ziplock bags, and several rounds of ammunition. The following day, the police searched McLendon's car, where they found a plastic bag of cocaine base.

McLendon testified in his own defense. He did not deny that he exchanged crack for cash, but contended that he had been entrapped into doing so. McLendon testified that he was an intimate friend of Gloria Pearson, who told him that she needed his help in obtaining money for drugs. According to McLendon, Pearson said that she had sold drugs to her girlfriend's husband, but that he had not paid her for them. Pearson allegedly told McLendon that she wanted the husband to think the drugs were coming from McLendon, because she thought that would ensure that the husband would pay. McLendon said he only agreed to help after Pearson said her mother had cancer. According to McLendon, Pearson provided all of the drugs that he sold to White; McLendon only pretended they were his. The defendant also said that after each transaction, he turned over to Pearson all of the money that White had paid him, keeping only enough for gas and haircuts.

Before the third trial began, McLendon's lawyer complained that witnesses in the second trial had made remarks about guns despite the district court's decision — midway through the second trial — to exclude such testimony. The court reiterated its instruction barring testimony "about guns." 1/4/00 Tr. at 6. Thereafter, on the second day of the third trial, Investigator Anastasios Kapetanakos testified about what he had found in his search of McLendon's bedroom. After Kapetanakos listed a number of drug-related items, the prosecutor asked whether there was "anything else recovered." 1/5/00 Tr. at 178. The investigator answered that he had also recovered "several rounds of ammunition." *Id.* The court immediately interrupted the testimony and instructed the jury to "[d]isregard that reference to ammunition." *Id.*[1]

McLendon's lawyer approached the bench and moved for a mistrial. The district court denied the request, stating that it would give a "more powerful curative instruction." *Id.* The

---

[1] The court apparently interpreted its prior instruction barring testimony "about guns" as including ammunition, 1/4/00 Tr. at 6, an interpretation the government does not dispute.

court then advised the jury as follows: "[A]gain I remind you Mr. McLendon, first of all, is not charged with possession of any contraband recovered from that home, and he's certainly not charged with possession of any ammunition, and I instruct you to disregard that question and disregard the answer." *Id.* at 179. Employing a leading question, the prosecutor then went on to elicit the fact that the investigator had also found a ledger in McLendon's bedroom, *id.*, a ledger shown to contain Detective White's pager number.[2]

At several points later in the trial, the court discussed the investigator's mention of ammunition and what should be done about it. The court stated that it believed the prosecutor's representation that he had told the witness not to mention weapons, and concluded that the witness had done so either intentionally or negligently. 1/7/00 a.m. Tr. at 104-08. In the end, however, the court found that the "[o]ne isolated reference to the ammunition is something that can be disregarded" by the jury. *Id.* at 106. The trial continued without further reference to ammunition, and the jury returned a guilty verdict against McLendon on all counts.

McLendon now appeals. His sole claim is that the trial judge erred in refusing to grant a mistrial in light of the investigator's mention of the ammunition.

## II

We review the trial judge's denial of McLendon's motion for a mistrial only for an abuse of discretion. *United States v. Gartmon*, 146 F.3d 1015, 1027 (D.C. Cir. 1998); *United States v. Williams*, 822 F.2d 1174, 1188 (D.C. Cir. 1987). "A mistrial is a severe remedy — a step to be avoided whenever possible, and one to be taken only in circumstances manifesting a necessity therefor." *United States v. Clarke*, 24 F.3d 257, 270 (D.C. Cir. 1994) (internal quotation marks omitted). The single most important consideration in ruling on a motion

---

[2] The government explains that it was this evidence, and not testimony concerning the ammunition, that the prosecutor had been attempting to elicit by asking the investigator whether he had recovered "anything else." Appellee's Br. at 14.

for a mistrial is the extent to which the defendant was unfairly prejudiced. *Id.*; *United States v. Tarantino*, 846 F.2d 1384, 1413 (D.C. Cir. 1988). In making that determination, we consider a number of factors, including the force of the unfairly prejudicial evidence, whether that force was mitigated by curative instructions, and the weight of the admissible evidence that supports the verdict. *See United States v. Eccleston*, 961 F.2d 955, 959-60 (D.C. Cir. 1992). In this case, the analysis of those factors is straightforward.

First, there was nothing unfairly prejudicial, per se, about the investigator's testimony that he had recovered ammunition from McLendon's room. *See United States v. Gloster*, 185 F.3d 910, 914 (D.C. Cir. 1999) (noting that "Rule 403 focuses not on prejudice but on the danger of unfair prejudice") (internal quotation marks omitted); *cf. Bank of Nova Scotia v. United States*, 487 U.S. 250, 255-56 (1988) (holding that "a court may not disregard the doctrine of harmless error simply 'in order to chastise what the court view[s] as prosecutorial overreaching'" (quoting *United States v. Hasting*, 461 U.S. 499, 507 (1983))). As the district court acknowledged, this circuit has frequently recognized that guns and drugs go together in drug trafficking,[3] and that evidence of a defendant's possession of the former can properly be used to show his connection to the latter.[4] Indeed, in a case directly on point, we held that a court had properly admitted "bullets found in [a defendant's] bedroom to prove that she

---

[3] *See, e.g., United States v. Brown*, 334 F.3d 1161, 1171 (D.C. Cir. 2003); *United States v. Conyers*, 118 F.3d 755, 757 (D.C. Cir. 1997).

[4] *See United States v. Dunn*, 846 F.2d 761, 764 (D.C. Cir. 1988) (holding "that juries may infer an intent to distribute" narcotics "from the presence of firearms"); *United States v. Payne*, 805 F.2d 1062, 1065 (D.C. Cir. 1986) (holding that guns were properly admitted to prove intent to distribute drugs because "it has uniformly been recognized that substantial dealers in narcotics possess firearms and that such weapons are as much tools of the trade as more commonly recognized drug paraphernalia"); *see also United States v. Moore*, 104 F.3d 377, 381 (D.C. Cir. 1997) (holding that evidence of the defendant's "connection to the guns suggests possession of the drugs found next to the guns").

was engaged in the [narcotics] trade." *United States v. Jenkins*, 928 F.2d 1175, 1180 (D.C. Cir. 1991). Accordingly — as McLendon's counsel correctly conceded at oral argument — had the district court initially permitted the admission of gun testimony in this case, we could not have found an abuse of the court's discretion. Oral Arg. Tape at 3:10-3:35.

Of course, the district court did not initially admit the gun evidence, but rather excluded it under Federal Rule of Evidence 403 on the ground that the danger of unfair prejudice outweighed the evidence's probative value. 7/13/99 Tr. at 61; *see* FED. R. EVID. 403. The court reached that conclusion, it said, because the defendant had been acquitted of gun charges in the first trial and was not charged with a gun crime in the superseding indictment. 7/13/99 Tr. at 58-61. The former point is inapposite because the ammunition recovered from the bedroom was unrelated to the charges of which McLendon had been acquitted at the first trial,[5] and both points ignore the case law permitting admission of gun evidence as probative of narcotics violations. *See supra* note 4. Nonetheless, we review a court's determination under Rule 403 "most deferentially." *Gartmon*, 146 F.3d at 1020 (internal quotation marks omitted).

But we also review most deferentially a district judge's decision to deny a mistrial, and we should not lose sight of the fact that the *same* judge who initially weighed the Rule 403 balance against admission of the evidence, subsequently determined that the investigator's testimony did not warrant a mistrial. Hence, even if the investigator's testimony *were* unfairly prejudicial, the judge's description of that testimony as "one isolated reference to the ammunition" was accurate, and his conclusion that it was "something that can be disregarded" by the jury is one to which we defer. 1/7/00 a.m. Tr. at 106.

---

[5] Those charges were for carrying a firearm during a drug trafficking offense and carrying a pistol without a license, both premised on a gun that McLendon allegedly had on his person at the time of his arrest.

This brings us to the second factor in our analysis, the district court's curative instructions. Immediately upon hearing the investigator's reference to ammunition, the court cut off the witness and told the jury to "[d]isregard that reference to ammunition." 1/5/00 Tr. at 178. It then followed up with a sterner admonition, reminding the jury that McLendon was "not charged with possession of any ammunition" and instructing the jurors "to disregard that question and disregard the answer." *Id.* at 179. During final jury instructions, the court further instructed, without mentioning ammunition, that "[i]f, after a witness answered a lawyer's question, I ruled that the answer should be stricken, you should disregard both the question and the answer in your deliberations." 1/7/00 p.m. Tr. at 37.

In denying the motion for a mistrial, the district court reasoned that the jury "can follow instructions to disregard testimony." *Id.* at 107. Both the Supreme Court and this court have presumed the same thing.[6] Given the brevity of the offending testimony and the clarity of the district court's instructions, we have no reason to doubt the validity of that presumption in this case. *See United States v. Burroughs*, 935 F.2d 292, 295 (D.C. Cir. 1991) (noting that an appellate court properly defers to a trial court's evaluation of "the

---

[6] *See Greer v. Miller*, 483 U.S. 756, 767 n.8 (1987) ("We normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an overwhelming probability that the jury will be unable to follow the court's instructions and a strong likelihood that the effect of the evidence would be devastating to the defendant") (internal quotation marks and citations omitted); *United States v. Walker*, 99 F.3d 439, 443 (D.C. Cir. 1996) ("We have no cause to doubt that the jury followed the court's curative instructions [to disregard improper testimony], therefore we do not believe the trial judge abused his discretion in denying the motion for a mistrial."); *United States v. Burroughs*, 935 F.2d 292, 295 (D.C. Cir. 1991) (holding that, "[u]nless there is some good reason for finding otherwise . . . courts proceed on the basis that the jury does comply" with cautionary instructions).

probable effect of cautionary instructions swiftly and firmly administered").

Finally, in determining the impact of unfairly prejudicial evidence on a jury, we weigh the extent of that prejudice against the strength of the admissible evidence. *See Eccleston*, 961 F.2d at 959-60. Here, the admissible evidence was extremely powerful. As noted above, McLendon did not dispute that he sold drugs to Detective White, relying instead on the defense of entrapment. That defense is comprised of two elements: "government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." *United States v. Evans*, 216 F.3d 80, 90 (D.C. Cir. 2000) (internal quotation marks omitted).[7]

McLendon contends that his testimony regarding his friendship with Pearson and her mention of her mother's cancer was sufficient to show "inducement." We need not decide whether McLendon is correct,[8] however, given the strength of the government's evidence of McLendon's predisposition. *See United States v. Hanson*, 339 F.3d 983, 989 (D.C. Cir. 2003); *United States v. Walls*, 70 F.3d 1323, 1329 (D.C. Cir. 1995). The tapes of the telephone calls and in-person transactions demonstrated McLendon's experience in selling, and eagerness to sell, narcotics. During the first transaction, for example, McLendon boasted that he knew his "stuff" was good because he had cooked the powder cocaine into crack himself. 1/4/00 Tr. at 204-05. He encouraged White "to come back to him" if people liked McLendon's product. *Id.* at 204. In a telephone conversation following

---

[7] *See United States v. Glover*, 153 F.3d 749, 754 (D.C. Cir. 1998) ("[T]he defendant bears the initial burden of showing government inducement; if he is successful, the burden then shifts to the government to prove the defendant was predisposed to commit the crime.").

[8] Government behavior amounts to inducement only "when it was 'such that a law-abiding citizen's will to obey the law could have been overborne.'" *Glover*, 153 F.3d at 754 (quoting *United States v. Kelly*, 748 F.2d 691, 698 (D.C. Cir. 1984)); *see also United States v. Hanson*, 339 F.3d 983, 989 (D.C. Cir. 2003).

that transaction, McLendon told Pearson that his "bags" were packed and "ready to go," which, she testified, meant that he was ready to sell more crack. 1/6/00 Tr. at 91-92. Thereafter, McLendon and White spoke repeatedly to arrange additional transactions. *See, e.g,* 1/5/00 Tr. at 23-26. On one particular day, McLendon paged White three times. These repeated efforts to initiate additional deals persuasively demonstrated McLendon's predisposition.[9]

In light of this strong evidence of McLendon's guilt, coupled with the judge's curative instructions, we conclude that the impact of the investigator's brief reference to ammunition was, if anything, de minimis. McLendon resists this conclusion, contending that the testimony regarding ammunition was the only evidence that differed between the second and third trials,[10] and that it therefore must be regarded as having been the decisive factor. But as we have cautioned in the past, the fact that a case previously ended in a mistrial is not sufficient to establish that the case was close. *See United States v. Williams*, 212 F.3d 1305, 1311 n.10 (D.C. Cir. 2000); *United States v. Bowie*, 142 F.3d 1301, 1307-08 (D.C. Cir. 1998).

In sum, even if we were to regard the investigator's mention of ammunition as unfairly prejudicial, the extent of that prejudice was insignificant in light of the court's curative instructions and the weight of the admissible evidence.

---

[9] *See United States v. Neville*, 82 F.3d 1101, 1107 (D.C. Cir. 1996) (holding that the "alacrity and active interest with which [the defendant] embraced the plan to smuggle drugs" would justify a jury in finding him "predisposed to commit the crime"); *Walls*, 70 F.3d at 1329 (holding that where the "defendants showed no hesitation in committing the crimes for which they were convicted," that "[a]lone . . . is enough to destroy their entrapment argument").

[10] Although it is true that the investigator did not refer to the ammunition during the second trial, several witnesses at that trial did refer to McLendon's connection to guns. *See* 7/13/99 Tr. at 13 (Detective White); 7/14/99 Tr. at 21-22 (Gloria Pearson); 7/19/99 Tr. at 66 (defendant McLendon).

11

### III

For the foregoing reasons, we conclude that the district court did not abuse its discretion in denying McLendon's motion for a mistrial. Accordingly, the judgment of the district court is

*Affirmed.*