# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued December 13, 2005        Decided February 3, 2006

No. 04-3152

UNITED STATES OF AMERICA,
APPELLEE

v.

CHARLES BOOKER,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 04cr00049-01)

———

*Mary E. Davis*, appointed by the court, argued the cause and filed the brief for appellant.

*Thomas S. Rees*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Kenneth L. Wainstein*, U.S. Attorney, *John R. Fisher*, Assistant U.S. Attorney at the time the brief was filed, and *Thomas J. Tourish, Jr.* and *Florence Pan*, Assistant U.S. Attorneys. *Roy W. McLeese, III*, Assistant U.S. Attorney, entered an appearance.

Before: GINSBURG, *Chief Judge*, and SENTELLE, *Circuit Judge,* and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* SENTELLE.

Concurring opinion filed by *Senior Circuit Judge* WILLIAMS.

SENTELLE, *Circuit Judge*: Charles Booker appeals his conviction and imprisonment for "constructive possession" of a firearm. Booker argues there was insufficient evidence to support his conviction and that his sentence must be vacated and remanded in light of *Booker v. United States*, 125 S. Ct. 738 (2005). Because we agree only with Booker's second argument, we affirm his conviction for "constructive possession" of a firearm, but we vacate his sentence and remand to the District Court for further proceedings consistent with this opinion.

## I. Background

In January 2004, an undercover officer with the D.C. Metropolitan Police Department approached Charles Booker and expressed interest in purchasing some crack cocaine. While the officer waited in his unmarked car, Booker ran about 50 feet up the street and returned 10 or 20 seconds later with a Newport cigarette pack. From the pack, Booker shook out two small Ziploc bags containing crack cocaine and gave one to the officer in return for $20 in prerecorded funds. The undercover officer left, and Booker walked back up the street to re-hide the Newport pack.

Two or three minutes later, several uniformed officers arrived to arrest Booker. One member of the arrest team asked Booker what he was doing outside, and Booker responded that he was looking for his Newport cigarettes. Officer Michael Penn, another member of the arrest team, then walked 50 feet up the street and found Booker's Newport pack lying on the ground. When Penn bent down to investigate, he saw a black

handgun "right beside" the Newport cigarette pack.

Booker was charged in a four-count indictment for unlawful distribution of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count One); unlawful possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count Two); using, carrying, or possessing a firearm during a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Three); and unlawful possession of a firearm and ammunition by a person convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1) (Count Four).

At trial, the government introduced evidence that the gun was loaded, and the Newport pack contained 3.8 grams of cocaine base, 75% pure. Although Booker's fingerprints were on neither the gun nor the Newport pack, the government linked Booker to the drugs through the undercover officer's testimony about the drug sale; the government also introduced evidence that Booker has previously sold crack using the same *modus operandi* (*i.e.*, dispensing crack from a Newport pack in the same neighborhood). The government then linked the gun to the drugs by offering photographic evidence of their physical proximity, and expert testimony that guns and drugs are "like a marriage. They can't do without the other." Unhelpfully, the photograph is not included in the parties' submissions in this case. However, Booker does not contest the government's assertion that the gun was lying approximately five inches away from the Newport pack, nor does Booker contest that the gun was clean and frost-free, notwithstanding the fact that it was recovered on a bitterly cold winter evening.

At the close of the government's case-in-chief, Booker moved for a judgment of acquittal. The District Court denied

the motion. The defendant then called his only witness, a private investigator, who introduced additional photographs of the neighborhood in which Booker was arrested. According to the defendant's private investigator, Booker was arrested 80 feet—not 50 feet—away from the gun-and-drugs stash.

Booker did not renew his motion for judgment of acquittal at the close of all the evidence. On May 10, 2004, the jury found appellant guilty on all four counts. On May 16, 2004, the defendant moved for a judgment of acquittal or, in the alternative, for a new trial. The District Court denied the motions.

On October 26, 2004, the District Court imposed a sentence under the Guidelines of 240 months on Count One, 240 months on Count Two, 60 months on Count Three, and 360 months on Count Four. The terms on Counts One, Two, and Four were to run concurrently, while Count Three was to run consecutively to all other counts. Thus, the District Court imposed an aggregate Guidelines sentence of 35 years in prison. Pending the Supreme Court's decision in *Booker v. United States*, 125 S. Ct. 738 (2005), the sentencing judge also announced a non-Guidelines "alternative sentence": ten years on Count One, ten years on Count Two, five years on Count Three, and 15 years on Count Four. Counts One and Two were to be served concurrently. Count Four was to be served consecutively to the ten years on Counts One and Two. Count Three was to be served consecutively to all other counts. Thus, the District Court imposed an aggregate non-Guidelines "sentence" of 30 years in prison. The District Court entered both sentences on the judgment form.

## II. Sufficiency of the Evidence

### A

We will affirm a conviction where "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also United States v. Wahl*, 290 F.3d 370, 375 (D.C. Cir. 2002). We do not distinguish between direct and circumstantial evidence, and we give "full play to the right of the jury to determine credibility, weigh the evidence and draw justifiable inferences of fact." *United States v. Clark*, 184 F.3d 858, 863 (D.C. Cir. 1999) (internal quotation marks and citations omitted). We "review the evidence of record *de novo*, considering that evidence in the light most favorable to the government." *Wahl*, 290 F.3d at 375.

Ordinarily, "an appellant seeking to overturn a jury verdict for insufficient evidence bears an exceedingly heavy burden." *United States v. Salamanca*, 990 F.2d 629, 637 (D.C. Cir. 1993). However, where a defendant fails to renew his motion for a judgment of acquittal (MJOA) under FED. R. CRIM. P. 29(a) at the close of all the evidence, his burden is even heavier: He "has waived his right to raise a sufficiency of the evidence claim on appeal" unless "declining to consider the sufficiency of the evidence on waiver grounds cause[s] a 'manifest miscarriage of justice.'" *United States v. Thompson*, 279 F.3d 1043, 1051 (D.C. Cir. 2002) (quoting *United States v. Sherod*, 960 F.2d 1075, 1077 (D.C. Cir.), *cert. denied*, 506 U.S. 980 (1992)). We note that Booker—like the defendants in *Thompson* and *Sherod*—failed to renew his MJOA at the close of all the evidence. Unlike the defendants in *Thompson* and *Sherod*, however, Booker *did* renew his MJOA after the jury verdict. Insofar as the "miscarriage of justice" standard is intended simply to ensure that the District Court has the opportunity to

order an MJOA after receiving all the evidence, *see Sherod*, 960 F.2d at 1077, Booker's post-verdict motion may be sufficient to preserve his objections to the sufficiency of the evidence against him. We need not determine this issue in the present case, because for the reasons set forth below, we conclude a rational juror could have convicted Booker for "possessing" the handgun.

B

Booker argues the prosecution did not establish that he "possessed" a gun for purposes of either Count Three or Count Four because the gun was not found on his person, no one saw him holding it, and no fingerprints were recovered from it. However, we have long held that "possession" for purposes of both §§ 922(g)(1) and 924(c)(1) "may be either actual or constructive." *United States v. Alexander*, 331 F.3d 116, 127 (D.C. Cir. 2003) (upholding a conviction under § 922(g)(1) on the basis of "constructive possession"); *see also Wahl*, 290 F.3d at 375-76 (upholding a conviction under § 924(c)(1) on the basis of "constructive possession").

We agree with the government that there was ample evidence to justify the jury's verdict that Booker "constructively possessed" the handgun for purposes of both Count Three and Count Four. "Constructive possession is established with evidence supporting a finding that the defendant had the ability to exercise knowing dominion and control over the items in question." *Wahl*, 290 F.3d at 376 (internal quotation marks and citations omitted). "Although mere proximity to a gun is insufficient to establish constructive possession, evidence of some other factor—including connection with a gun, proof of motive, a gesture implying control, evasive conduct, or a statement indicating involvement in an enterprise—coupled with proximity may suffice." *Alexander*, 331 F.3d at 127 (internal

quotation marks and citations omitted). In this case, several *Alexander*-type "plus factors" allowed the jury to infer Booker's "connection with [the] gun." The government's drug expert testified that drug dealers have a "motive"—namely, defense of themselves and their drug stashes—to carry guns. The undercover police officer watched (through his rearview mirror) as Booker walked up the street and made "a gesture implying control" over the gun, which was stashed immediately next to the Newport pack. Booker then made a "statement indicating involvement in an enterprise" when he told the arrest team that he was looking for his Newport cigarettes. Coupled with the fact that the stash was never more than 50-80 feet away from Booker, these factors constitute ample evidence to find constructive possession under *Alexander* and *Wahl*.

Moreover, Booker's indisputable "dominion and control over" the drugs, *Wahl*, 290 F.3d at 376, further supports our conclusion that he "constructively possessed" the nearby gun. The government's drug expert testified about the unique relation between drug stashes and firearms, stating that one often "can't do without the other." The expert's testimony accords with our prior caselaw, which "has frequently recognized that guns and drugs go together in drug trafficking." *United States v. McLendon*, 378 F.3d 1109, 1113 (D.C. Cir. 2004); *see also United States v. Brown*, 334 F.3d 1161, 1171 (D.C. Cir. 2003) (noting guns and drugs are often present together, and therefore, the presence of one can be used to infer the presence of the other); *United States v. Conyers*, 118 F.3d 755, 757 (D.C. Cir. 1997) (same); *United States v. Payne*, 805 F.2d 1062, 1065-66 (D.C. Cir. 1986) (same). Thus, we reaffirm that "evidence of a defendant's possession of [guns] can properly be used to show his connection to [drugs]," *McLendon*, 378 F.3d at 1113, and vice versa. *See United States v. Evans*, 888 F.2d 891, 896 (D.C. Cir. 1989) ("The government presented evidence that [all three defendants] were engaged in a common [drug] enterprise. From

this evidence a jury could reasonably infer that all three shared direct access to, and dominion and control over, the knapsack," which contained both cocaine and guns.), *cert. denied sub nom. Curren v. United States*, 494 U.S. 1019 (1990); *compare In re Sealed Case*, 105 F.3d 1460, 1465 (D.C. Cir. 1997) (holding there was insufficient evidence to support constructive possession of a gun because it was physically impossible for the defendant to grab the gun during the drug sale).

This case differs markedly from *In re Sealed Case*. There, the defendant remained inside a restaurant while his brother conducted a drug sale in a car, which was parked outside the restaurant. When the police arrested the defendant and his brother, they discovered a gun under the driver's seat of the car. We held there was insufficient evidence to support the District Court's conclusion that the defendant "constructively possessed" the gun because the spatial separation between the defendant, the gun, and the drugs precluded him from exercising "dominion and control" over the firearm during the transaction. *See id.* Here, by sharp contrast, Booker easily could have grabbed the gun during the drug sale (either when he went to pick up the Newport cigarette pack, or when he went back to re-hide it). The proximity of the gun and the drugs suggest they were stashed by the same person, as part of "a common [drug] enterprise," *Evans*, 888 F.2d at 895, and the lack of frost and dirt on the gun suggests it had been stashed recently. Finally, Booker was a veteran drug-vendor in his high-crime neighborhood, and he doubtlessly had a motive to carry a gun to protect himself and his illicit assets. *See United States v. Jefferson*, 974 F.2d 201, 208 (D.C. Cir. 1992) (concluding there "was sufficient evidence that the guns were present 'to protect [the] drug traffickers and their investment'") (quoting *United States v. Anderson*, 881 F.2d 1128, 1141 (D.C. Cir. 1989)).

In these circumstances, a rational juror could reasonably conclude Booker constructively possessed the gun lying next to his drugs, and it is certainly not a "manifest miscarriage of justice" to affirm the jury's verdict. Accordingly, we affirm Booker's conviction on Count Three and Count Four.

## III. The Sentence

### A

Booker and the government agree that the sentencing court committed a constitutional error by applying the Guidelines as mandatory. *See Booker*, 125 S. Ct. at 746; *United States v. Ayers*, 428 F.3d 312, 314 (D.C. Cir. 2005); *United States v. Simpson*, 430 F.3d 1177, 1184 (D.C. Cir. 2005). Where, as here, a defendant entered a timely and valid objection to an error before the District Court, we review his claim under the harmless error standard. *See United States v. Coumaris*, 399 F.3d 343, 351 (D.C. Cir. 2005). "To justify reversal of a conviction under that standard, there must be (1) error, (2) that 'affect[s] substantial rights'—i.e., that is prejudicial." *United States v. Perkins*, 161 F.3d 66, 72 (D.C. Cir. 1998) (quoting FED. R. CRIM. P. 52(a) and citing *United States v. Olano*, 507 U.S. 725, 731, 734 (1993)). The government bears the burden of proving that prejudice did not result from the error. *See Olano*, 507 U.S. at 734.

In this case, it is clear beyond a reasonable doubt that Booker was prejudiced by the sentencing error, as evidenced by the District Court's willingness to sentence him to only 30 years if the Supreme Court rendered the mandatory application of the Guidelines unconstitutional. What is unclear, however, is the appropriate remedy. Because "we are to review 'judgments, not opinions,'" we have previously held a single judgment (in the form of a 46-month sentence) imposed under two independent

rationales was not necessarily erroneous simply because one of its supporting rationales was erroneous. *Simpson*, 430 F.3d at 1184 (internal quotation marks and citations omitted). We hasten to point out, however, that *Simpson* did not limit our review to the four corners of the judgment form. *See id.* at 1185-90 (extensively reviewing portions of the sentencing transcript). Thus, *Simpson* did not hold that a sentencing judge could render harmless the mandatory application of the Guidelines by entering a second, independent "judgment" in the form of an "alternative sentence." More specifically, we expressly did not extend our holding to a case—such as this one—in which the District Court imposed a different "alternative sentence." *See id.* at 1184 n.7 (noting we have never had an "occasion to consider what the appropriate disposition would be if the district court had announced a [Guidelines sentence and an] alternative sentence" of different lengths).

At oral argument, we called for supplemental briefing on whether we should simply affirm the District Court's "alternative sentence," or whether we must vacate the Guidelines sentence and remand for further proceedings. The government supports the former option, while Booker supports the latter. For the reasons set forth below, we agree with Booker.

### B

We note at the outset that "alternative sentencing" is not a post-*Blakely* innovation. Doubting the constitutionality of the Guidelines shortly after their promulgation in 1987, some judges imposed pre-Guidelines sentences along with "alternative sentences" that comported with the Guidelines. After the Supreme Court upheld the constitutionality of the Guidelines in *Mistretta v. United States*, 488 U.S. 361 (1989), the appellate

courts disagreed over how to handle differing "alternative sentences." *Compare United States v. Smith*, 888 F.2d 720, 722 n.2 (10th Cir. 1989) (holding an "alternative sentence imposed under the Sentencing Guidelines is operative" after *Mistretta*), *with United States v. Feekes*, 879 F.2d 1562, 1568 (7th Cir. 1989) (holding it is "incorrect" to argue that an "alternative sentence . . . sprang into effect" after *Mistretta*). Neither we nor the parties could find a *Mistretta*-era case that analyzed the standalone legal effect (if any) of an "alternative sentence." The Supreme Court never resolved the issue, which soon fell by the wayside. *See United States v. Brittman*, 872 F.2d 827, 829 (8th Cir. 1989) (noting "of course . . . the two-track [sentencing] procedure [will not] be appropriate in the future").

Under the Guidelines, a sentencing judge had no reason to impose "alternative sentences." It is therefore unsurprising that neither we nor the parties could find guidance on "alternative sentences" in the pre-*Blakely* caselaw or treatises. After the Supreme Court cast doubt over the constitutionality of the federal Sentencing Guidelines, *see Blakely v. Washington*, 542 U.S. 296, 305 n.9 (2004), at least one appellate court suggested that sentencing judges should impose an "alternative sentence" in addition to a Guidelines sentence, pending the Supreme Court's decision in *Booker*. *See, e.g., United States v. Hammoud*, 381 F.3d 316, 353 (4th Cir. 2004) (dicta). However, the concept of "alternative sentences" did not command universal acclaim. *See, e.g., United States v. Johnson*, 333 F. Supp. 2d 573, 579 (S.D. W. Va. 2004) (rejecting *Hammoud* and holding "alternative sentencing is inconsistent with the judicial obligation to reach a decision and undermines the role of the court").

The majority of circuits that have considered the question post-*Blakely* has held that a lower "alternative sentence" requires the vacatur of a higher Guidelines sentence and a

remand for further proceedings. Three circuits have vacated a Guidelines sentence and remanded for resentencing without considering whether they could simply affirm a lower "alternative sentence." *See United States v. Hartfield*, 138 Fed. Appx. 351, 352 (2d Cir. 2005); *United States v. Lampkins*, 153 Fed. Appx. 176, 178 (4th Cir. Nov. 3, 2005) (per curiam); *United States v. Jackson*, 147 Fed. Appx. 109, 112 (11th Cir. 2005) (per curiam). One circuit adopted the same position in dicta. *See United States v. Cox*, 2005 WL 3304022, *4 (6th Cir. Dec. 6, 2005). A fifth circuit has vacated a Guidelines sentence and remanded for resentencing in several cases, *see United States v. Michel-Galaviz*, 415 F.3d 946, 949 (8th Cir. 2005); *United States v. Thomas*, 422 F.3d 665, 669-70 (8th Cir. 2005); *United States v. Storer*, 413 F.3d 918, 923-24 (8th Cir. 2005), while one of its decisions appears inconsistent, *United States v. Merryman*, 136 Fed. Appx. 953, 955 (8th Cir. 2005) (per curiam). One circuit has suggested that it would affirm a lower "alternative sentence" if all its "triggers" were satisfied. *See United States v. Adair*, 2005 WL 2990586, *5-7 (5th Cir. Nov. 8, 2005). Finally, one circuit has held that a lower "alternative sentence" requires the vacatur of a higher Guidelines sentence and a remand for the "ministerial task" of amending the judgment and committal form "to reflect the [lower] alternate sentence[, which] is the operative sentence." *United States v. Howe*, 139 Fed. Appx. 61, 64 & n.3 (10th Cir. 2005). None of these cases analyzed the standalone legal effect (if any) of an "alternative sentence." Today we address that issue. Because we conclude an "alternative sentence" is not really a "sentence," and because the parties concede Booker was prejudiced by the mandatory application of the Guidelines, we vacate the sentence and remand for further proceedings.

13

C

We begin with the "general rule that there can be only one final judgment[.] . . . It follows as a necessary consequence of the general rule that, when a final judgment has once been entered, no second or different judgment may be rendered . . ., until the first shall have been vacated and set aside or reversed on appeal or error. Where a second judgment is entered by a court after the first judgment has become final the second judgment is void." 49 C.J.S. JUDGMENTS § 76, at 150-51 (2005); *see also Home Life Ins. Co. of Brooklyn v. Dunn*, 86 U.S. 214, 225 (1873) ("To say that there can be *two* final judgments . . . involves a solecism." (emphasis in original)); *Badger Pharmacal, Inc. v. Colgate-Palmolive Co.*, 1 F.3d 621, 625 (7th Cir. 1993) (noting there can be "only one final judgment per case"); 46 AM. JUR. 2D JUDGMENTS § 9, at 378 (2005) ("A judge, having rendered and signed one final judgment, has no authority to sign another one. Thus, after a final judgment has been entered in a ca[]se, the entry of a second final judgment in the same ca[]se does not vacate the first, and if there is nothing to show that the first is vacated, then the second is a nullity." (footnotes omitted)).

In the context of criminal sentencing, we have long recognized "that the pronouncement of sentence constitutes the judgment of the court." *Gilliam v. United States*, 269 F.2d 770, 772 (D.C. Cir. 1959). Therefore, once the court pronounces a criminal sentence—which constitutes a "judgment"—the court has no lawful authority to supplement that sentence with a second one.[1] Because the sentencing judge's oral

---

[1]Of course, the District Court may modify or correct a judgment in accordance with FED. R. CRIM. P. 35 (for either a "clear error" or the defendant's "substantial assistance") and FED. R. CRIM. P. 36 (for a "clerical error"). However, both rules prescribe

pronouncement constitutes the judgment of the court, and because the sentencing judge may impose one and only one judgment, the written judgment form is a nullity to the extent it conflicts with the previously pronounced sentence, *id.* at 772-73; *see also Hill v. United States ex rel. Wampler*, 298 U.S. 460, 464-65 (1936); *Lewis*, 626 F.2d at 953; *Kennedy v. Reid*, 249 F.2d 492, 495 (D.C. Cir. 1957).

In this case, the District Court orally instructed the United States Bureau of Prisons to incarcerate Booker for 35 years under the then-applicable Guidelines. After pronouncing this sentence, the District Court had no lawful authority to pronounce a shorter "alternative sentence" because the District Court had no lawful authority to enter a second judgment. To the extent the District Court attempted to reduce or qualify its pronouncement of a Guidelines sentence by entering a shorter "alternative sentence" on the judgment form, the court's original sentencing pronouncement controls. *See, e.g.*, *Lewis*, 626 F.2d at 953; *see also* 18 U.S.C. § 3582(c) ("The court may not modify a term of imprisonment once it has been imposed except" under circumstances not relevant here.).

Accordingly, we hold that Booker's thirty-five-year Guidelines sentence was the *only* sentence the District Court imposed, and it is the only sentence before us today.[2] Had the

procedures for such changes, and both rules require the District Court to incorporate those changes into a single, preexisting judgment. *See United States v. Lewis*, 626 F.2d 940, 953 & n.21 (D.C. Cir. 1980); *Poole v. United States*, 250 F.2d 396, 401 (D.C. Cir. 1957). Neither rule empowers the District Court to enter a second, independent judgment.

[2] Because the "alternative sentence" is not embodied in a judgment, we have no occasion to review it under the harmless error standard.

parties not stipulated to the fact that Booker was prejudiced by his Guidelines sentence, we would look to the "alternative sentence" only to determine prejudice *vel non*. *Cf. United States v. Coles*, 403 F.3d 764, 767 (D.C. Cir. 2005) (per curiam) (holding that "in assessing whether the District Court's *Booker* error was prejudicial, we must determine whether there would have been a materially different result, more favorable to the defendant, had the sentence been imposed in accordance with the post-*Booker* sentencing regime"); *Simpson*, 430 F.3d at 1191 (holding an identical "alternative sentence" rendered harmless the sentencing court's *Booker* error).  Because Booker's one and only sentence was erroneous, and because the parties agree the error was not harmless, we vacate and remand for further proceedings.  *See Ayers*, 428 F.3d at 315-16.

The imposition of a discretionary, post-*Booker* sentence is *not* a "ministerial task."[3]  *Howe*, 139 Fed. Appx. at 64 n.3. Given *Booker*'s emphasis on sentencing judges' discretion, *see* 125 S. Ct. at 765-69, we cannot instruct the District Court on remand to enter a judgment imposing a thirty-year sentence. This disposition comports with accepted appellate practice in cases—such as those involving federal sentencing—that hinge on the District Court's discretion:

It sometimes occurs that, after having considered the lower court decision and found error, an appellate court merely reverses or vacates and then remands—that is, it sets the judgment aside and sends the case back to the lower court for further proceedings, rather than entering or directing

---

[3]Of course, if the district judge is still satisfied from the record that the sentence previously announced as an alternative is the appropriate disposition, it may well be in order to simply sentence on the record rather than having another full-blown hearing.

entry of judgment for the appellant or petitioner. That is the appropriate course whenever the finding of error does not automatically entitle the appellant or petitioner to judgment, and the appellate court cannot conduct (or chooses not to conduct) the further inquiry necessary to resolve the questions remaining in the litigation. Our books are full of such cases, from *Glass v. Sloop Betsey*, 3 Dall. 6 (1794), and *Clarke v. Russell*, 3 Dall. 415 (1799), to *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646 (1995), and *Tuggle v. Netherland*, 516 U.S. 10 (1995).

*Stutson v. United States*, 516 U.S. 163, 177-78 (1996) (Scalia, J., dissenting). The *Stutson* majority did not take issue with what is apparently a self-evident proposition.

To summarize, our ruling in *Simpson* that the original judgment could stand is not applicable here. In *Simpson* we did not – indeed, could not – vacate the judgment below, as there was no cognizable error: that is, the judge's application of the Guidelines as if mandatory did not affect his judgment. Here, the error is prejudicial, and the District Court, perhaps wisely, alerted us to the prejudice resulting from his being forced to impose a sentence more stringent under the mandatorily applied Guidelines than he otherwise would have done. Since the error prejudiced the rights of the defendant, we must vacate the judgment. We know of no authority that empowers us to require the district judge to enter the "alternative sentence," which he previously recited into the record. It may well be the case, indeed it is likely, that he will enter the same judgment. Perhaps he will determine that he need not hold a resentencing hearing but may simply act upon the record. All those things are for that court on another day. Our authority is exhausted when we have vacated the judgment entered on the basis of a prejudicial error.

## IV

For the reasons set forth above, the judgment of the District Court is affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion.

*So ordered.*

WILLIAMS, *Senior Circuit Judge*, concurring: I concur, but note an anomaly and a distinction. The anomaly is between this case and ones like *United States v. Simpson*, 430 F.3d 1177 (D.C. Cir. 2005). In the latter cases, where the district court chooses *identical* alternative sentences (both under the Guidelines and under an estimate of the likely outcome in the Supreme Court's then-looming decision in *Booker v. United States*, 125 S. Ct. 738 (2005)), the defendant gets no new judicial consideration at all unless he persuades us that the judge's mindset in imposing the alternative wasn't close enough to what the Supreme Court prescribed in *Booker*. Here, by contrast, where the court imposed *different* sentences, the defendant gets at least the chance that the district court might grant a sentencing hearing, even though (so far as appears) the district court perfectly anticipated the nature of its post-*Booker* discretion.

The outcome in this case is driven, as the court's opinion shows, by the principle that a sentencing court can impose only one judgment. But there may be other ways to skin the cat. Although there is a one-judgment principle, there appears to be no categorical rule against contingent or alternative judgments. In *Williams v. Illinois*, 399 U.S. 235 (1970), for example, the Supreme Court reviewed the constitutionality of a criminal statute that required individuals who had not paid the fees or fines that were part of their sentence by the end of their prison terms to remain incarcerated until they had "worked off" outstanding balances at the rate of $5 per day. *Id*. at 236. While disallowing such imprisonment where it would increase the term of imprisonment beyond the statutory maximum for the substantive offense, the Court emphasized that its holding did "not deal with a judgment of confinement for nonpayment of a fine in the familiar pattern of an alternative sentence of '$30 or 30 days.'" *Id*. at 244.

The present case doesn't involve a contingent or alternative sentence, as the court didn't include the non-Guidelines sentence in the judgment. And sentence contingencies based on anticipated outcomes in Supreme Court decisions may, of course, pose different problems from contingencies based on the defendant's conduct. But whatever those issues may be, our decision here doesn't speak to the availability of such judgments to solve transition problems such as those posed by *Booker*/*Blakely v. Washington*, 542 U.S. 296 (2004).