# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued March 8, 2013                    Decided April 12, 2013

No. 12-3051

UNITED STATES OF AMERICA,
APPELLANT

v.

JARED CARDOZA,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:11-cr-00275-1)

*Christopher Macchiaroli*, Assistant U.S. Attorney, argued the cause for appellant. With him on the briefs were *Ronald C. Machen Jr.*, U.S. Attorney, and *Elizabeth Trosman* and *Elizabeth H. Danello*, Assistant U.S. Attorneys.

*Howard B. Katzoff*, appointed by the court, argued the cause for appellee.

Before: GARLAND, *Chief Judge,* and BROWN and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH, with whom *Chief Judge* GARLAND and *Circuit Judge* BROWN join.

Concurring opinion filed by *Circuit Judge* BROWN.

KAVANAUGH, *Circuit Judge*: Police officers executed a search warrant for Jared Cardoza's apartment and seized more than 200 grams of cocaine, more than 300 grams of marijuana, a Beretta 9-millimeter semi-automatic pistol, a Colt .357 revolver, more than $100,000 in cash, and a variety of drug paraphernalia. After the Government obtained a grand jury indictment against Cardoza for federal drug trafficking and firearm offenses, Cardoza moved to suppress the evidence found in his apartment. According to Cardoza, the police officer who prepared the search warrant affidavit made false statements in the affidavit and did so with reckless disregard for the truth. Without those statements, Cardoza argued, the search warrant affidavit did not establish probable cause, meaning that the evidence seized from his apartment must be suppressed. *See Franks v. Delaware*, 438 U.S. 154 (1978).

The District Court agreed with Cardoza and granted the motion to suppress. We reverse. We conclude that, even with the contested statements excised, the remaining portions of the officer's affidavit demonstrate probable cause for the search warrant.

I

At about 1:00 a.m. on Saturday, August 27, 2011, three Metropolitan Police Department officers driving on patrol in Washington, D.C., observed a car stopped in a no-parking zone. As the officers drove by the car, one of the officers saw

Jared Cardoza and Adam Ungar talking outside the car and saw each man extend a hand toward the other. The officers then turned around and returned to the car, in which Cardoza and Ungar were now seated. After speaking with Cardoza and Ungar, the officers ordered them out of the vehicle. The officers observed a marijuana cigarette lying on the seat where Cardoza had been sitting and a knotted plastic bag containing 4.3 grams of cocaine lying next to the seat where Ungar had been sitting.

The officers arrested both Cardoza and Ungar. In a search incident to the arrest, the officers recovered from Cardoza: (i) three disposable cell phones, each in a separate pocket; (ii) $2,880 total in cash, separated into sums of $255, $250, and $2,375; (iii) a knotted plastic bag containing marijuana; and (iv) a sheet of paper listing cities with baseball franchises and dollar figures. When arrested, Cardoza provided a Maryland address to the police. A later law-enforcement records check showed a D.C. apartment as Cardoza's current address and described the Maryland address as inactive for the preceding two years. The records check also revealed that Cardoza had previously been arrested for marijuana possession and possession with intent to distribute marijuana.

One of the police officers recorded those facts, among others, in an affidavit in support of a search warrant for Cardoza's D.C. apartment. The officer sought the warrant to search for evidence relating to narcotics distribution, narcotics possession, and illegal gambling. A D.C. Superior Court judge found probable cause and issued the search warrant. The officers then executed the search warrant at Cardoza's apartment and found and seized more than 200 grams of cocaine; more than 300 grams of marijuana; a Beretta 9-

millimeter semi-automatic pistol and a Colt .357 revolver; more than $100,000 in cash; and paraphernalia associated with drug distribution, including a grinder, a scale, a cutting agent, and packaging materials.

Shortly thereafter, the Government obtained a federal grand jury indictment against Cardoza for possession with intent to distribute cocaine, possession with intent to distribute marijuana, and possession of a firearm during a drug trafficking offense. *See* 18 U.S.C. § 924(c)(1); 21 U.S.C. § 841. Cardoza moved to suppress all evidence obtained pursuant to the execution of the search warrant.

Under *United States v. Leon*, suppression of evidence is usually not required when officers conduct a search in reasonable reliance on a search warrant issued by a detached and neutral magistrate. 468 U.S. 897, 913 (1984). The *Leon* rule has a few exceptions. *See id.* at 922-23. As relevant here, the *Leon* rule does not apply when the officer seeking the search warrant made false statements in the affidavit and did so either knowingly or with reckless disregard for the truth. *See id.* at 923; *United States v. Richardson*, 861 F.2d 291, 294 n.5 (D.C. Cir. 1988). That is known as the *Franks* exception. *See Franks v. Delaware*, 438 U.S. 154 (1978).

To exclude evidence under *Franks*, the defendant must meet two requirements. First, the defendant must establish by a preponderance of the evidence "that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *Id.* at 155-56. Second, "with the affidavit's false material set to one side, the affidavit's remaining content" must be "insufficient to establish probable cause." *Id.* at 156.

In this case, the District Court held a *Franks* hearing and found that the officer had made four false statements in the affidavit: that when Cardoza and Ungar were outside the car, the officer saw each "touch[] the other's hand with his own";[1] that the officer found it "telling" that the knotted plastic bags of drugs recovered from Cardoza and Ungar were in "the same uncommon form of packaging"; that Cardoza had told the officer that he had a large sum of cash because he "took bets on baseball games"; and that, in the officer's opinion, Cardoza was likely carrying a "ledger and currency reserve" in order to "take, track, payout and collect on wagers." *See* Transcript of Status Conference at 24-30, *United States v. Cardoza*, No. 11cr275 (D.D.C. May 31, 2012).

The District Court also found that the police officer had made those false statements with reckless disregard for the truth. *See id.* at 20, 31. The District Court then excised all four statements from the affidavit and proceeded, as required by *Franks*, to evaluate whether the remaining portions of the affidavit were sufficient to establish probable cause. According to the District Court, the remaining material did not "give rise to probable cause to believe that the defendant was either a narcotics trafficker or running a gambling operation." *Id.* at 31. Therefore, the District Court granted Cardoza's motion to suppress. *Id.* at 32.

---

[1] Contrary to Cardoza's assertion, the District Court did not discount the officer's entire description of the encounter between Cardoza and Ungar outside the car. Rather, it found false only the officer's statement that the two men actually touched hands. *See* Transcript of Status Conference at 24, *United States v. Cardoza*, No. 11cr275 (D.D.C. May 31, 2012) ("I find that . . . by a preponderance of the evidence, the statement in the Affidavit that the hands touched was false.").

6

II

On appeal, the Government forcefully challenges both prongs of the District Court's *Franks* analysis. The Government first argues that the District Court clearly erred in finding that the police officer's statements in the warrant affidavit were made with reckless disregard for the truth. In the alternative, the Government contends that, even with those statements excised from the warrant affidavit, the remaining portions of the affidavit still readily established probable cause to search Cardoza's apartment for evidence of narcotics. Because we agree with the Government that the remaining portions of the affidavit still established probable cause, we need not address the District Court's reckless disregard findings.

Under the *Leon* rule, we ordinarily do not suppress evidence seized pursuant to a search warrant unless the warrant affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *See United States v. Leon*, 468 U.S. 897, 923 (1984); *United States v. Spencer*, 530 F.3d 1003, 1006-07 (D.C. Cir. 2008). But in this case, no judge issued a search warrant based on the affidavit that we now must hypothesize – that is, an affidavit purged of the four contested statements. Whether that hypothetical, redacted affidavit still established probable cause is therefore a legal question that we review de novo. *See United States v. Glover*, 681 F.3d 411, 417 (D.C. Cir. 2012).

The Supreme Court has described the task of evaluating probable cause as "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a

crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Judges "need not confine their evaluations within rigorous legalistic boundaries but instead may use their common sense." *United States v. Davis*, 617 F.2d 677, 692 (D.C. Cir. 1979).

Although the question is close, we conclude that the remaining uncontested portions of the officer's affidavit established a "fair probability" of finding evidence of drugs in Cardoza's apartment.

The question here breaks down into two subsidiary questions: First, was there probable cause to believe Cardoza was engaged in drug trafficking? And second, if so, does that create probable cause to search his apartment?

*First*, in analyzing whether the affidavit established probable cause to believe Cardoza was involved in drug trafficking, we consider the following facts:

- Officers saw Cardoza speak with Ungar outside a car, where each man extended a hand toward the other. Then, when the officers approached, Cardoza and Ungar were both in the car. Next to Ungar's seat in the car was a knotted plastic bag containing 4.3 grams of cocaine, which a police officer averred constituted a distribution-level quantity. Those circumstances suggested that Cardoza and Ungar may have engaged in a drug transaction involving the sale of a distribution-level quantity of cocaine.
- When Cardoza was arrested, he had a knotted plastic bag of marijuana, and a marijuana cigarette was lying on his seat in the car.

- When Cardoza was arrested, he had almost $3,000 in cash.
- When Cardoza was arrested, he had three disposable cell phones.
- When Cardoza was arrested, he gave police an address that was not accurate.
- After Cardoza was arrested, a records check revealed that he had previously been arrested for possession with intent to distribute drugs.

Cardoza's apparent drug transaction with Ungar, which involved a distribution-level quantity of cocaine, created at least some suspicion of potential drug trafficking activity. And the other facts – the large amount of cash Cardoza had with him, his three disposable cell phones, the false address he provided, his past arrest record for drugs – increased the likelihood that Cardoza was involved in drug trafficking activity, as courts have found in similar circumstances. *See, e.g.*, *United States v. Young*, 609 F.3d 348, 355 (4th Cir. 2010) (defendant's possession of large amount of cash and multiple cell phones as evidence of drug distribution); *United States v. Whitner*, 219 F.3d 289, 299 (3d Cir. 2000) (defendant's attempts "to conceal his address" could support finding of probable cause to search his apartment for evidence of drug dealing); *United States v. Vanness*, 85 F.3d 661, 663 (D.C. Cir. 1996) (defendant's criminal record could support finding of probable cause that he was dealing drugs). This is not a case where the suspect possessed only a user-level amount of marijuana and there was no other evidence.

In our view, the evidence in this case – when taken together – establishes at least a "fair probability" that Cardoza was involved in drug dealing. To be sure, even with all of the evidence gathered by the officers, it remained *possible* that

Cardoza would turn out not to be a drug dealer. But probable cause does not require certainty, or proof beyond a reasonable doubt, or proof by a preponderance of the evidence. The Supreme Court has stated that probable cause requires a fair probability. *See Florida v. Harris*, 133 S. Ct. 1050, 1055 (2013). That standard was satisfied here.

The crux of Cardoza's argument to the contrary is that the affidavit does not identify sufficient evidence of drug trafficking because it does not recite either direct evidence of distribution or possession of drugs in sufficient weight and packaging to show an intent to distribute. We disagree. The 4.3 grams of cocaine found next to Ungar's seat in the car constituted a distribution-level quantity, according to the Government's affiant, and circumstantial evidence – including Cardoza and Ungar's apparent drug transaction and their presence together in the car – suggested that Cardoza might be linked to that cocaine. Moreover, as Justice Kagan recently explained for the Supreme Court in a Fourth Amendment informant case, a "gap as to any one matter . . . should not sink the State's case." *Harris*, 133 S. Ct at 1056. Rather, in the realm of probable cause, the Supreme Court has "rejected rigid rules, bright-line tests, and mechanistic inquiries in favor of a more flexible, all-things-considered approach." *Id.* at 1055.

*Second*, the conclusion that there was probable cause to believe Cardoza was involved in drug trafficking leads to the further conclusion that there was probable cause to search Cardoza's apartment. Based on his training and experience, the police officer opined in his affidavit that "narcotics traffickers often keep additional supplies of narcotics within their residences," along with weapons and large sums of cash. Cardoza Motion to Suppress, Exhibit 1, at 7, *United States v.*

*Cardoza*, No. 11cr275 (D.D.C. Dec. 16, 2011).  The officer's commonsense assessment echoes this Court's own analysis of the matter:  "Common experience suggests that drug dealers must mix and measure the merchandise, protect it from competitors, and conceal evidence of their trade – such as drugs, drug paraphernalia, weapons, written records, and cash – in secure locations.  For the vast majority of drug dealers, the most convenient location to secure items is the home." *Spencer*, 530 F.3d at 1007.  When there is probable cause that a defendant is dealing drugs, there often tends to be probable cause that evidence of that drug dealing will be found in the defendant's residence.  *See id.* at 1007-08; *United States v. Johnson*, 437 F.3d 69, 71-72 (D.C. Cir. 2006).  So it is in this case.

\* \* \*

We reverse the District Court's suppression order.

*So ordered.*

BROWN, J., concurring: In conceding the falsity of the four challenged statements and declining to contest the District Court's determination that there was insufficient evidence to show probable cause of an illegal gambling operation, the government's nervy litigation strategy has made this a far closer case than it might otherwise have been. I write only to emphasize that while the government ultimately prevails, its victory should be looked upon as a warning, not an invitation. We have found probable cause by only a hair's breadth. Efforts to establish probable cause based on affidavits less substantial than the corrected and qualified affidavit now before this Court are unlikely to inch over the threshold.