# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 14, 2014      Decided December 30, 2014

No. 11-3097

UNITED STATES OF AMERICA,
APPELLEE

v.

THOMAS M. WASHINGTON,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:11-cr-00105-1)

———

*Tony Axam, Jr.*, Assistant Federal Public Defender, argued the cause for appellant. With him on the briefs was *A.J. Kramer*, Federal Public Defender. *Lara G. Quint*, Assistant Federal Public Defender, entered an appearance.

*Chrisellen R. Kolb*, Assistant U.S. Attorney, argued the cause for appellee. On the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *Elizabeth Trosman*, *John P. Mannarino*, and *Peter S. Smith*, Assistant U.S. Attorneys.

Before: GARLAND, *Chief Judge*, WILKINS, *Circuit Judge*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*: Following a jury trial, Thomas Washington was convicted of possession with intent to distribute 28 grams or more of cocaine base, possession with intent to distribute cannabis, and various firearms offenses. On appeal, Washington argues that the district court erred in denying his pretrial motion to suppress evidence because the government's search-warrant affidavit did not establish probable cause to search his residence. We agree with the district court that, even if the affidavit was inadequate to support a search warrant, this case falls within the good-faith exception of *United States v. Leon*, 468 U.S. 897 (1984). We therefore affirm.

\* \* \*

On September 26, 2009, Officer Jordan D. Katz of the Washington, D.C. Metropolitan Police Department applied for a warrant to search the residence at 3025 Yost Place, Northeast, in Washington D.C. In his affidavit in support of the application, Officer Katz stated that within the past 72 hours he had spoken to a confidential informant who had been used on over 100 occasions and had never provided police officers with false information. The informant told Officer Katz that a friend, labeled the "unwitting informant," had asked the confidential informant to accompany him or her to 3025 Yost Place to purchase crack cocaine from an individual named "Tom." After arriving at the location, the confidential informant broke away from the unwitting informant to conceal himself or herself. The confidential informant then observed a man exit the residence, walk down the front steps, and enter a parked blue Cadillac bearing District of Columbia tags "BS3960." The confidential informant observed the unwitting informant enter the Cadillac with the man who had

just emerged from 3025 Yost Place and exit the car after several moments. The unwitting informant then met the confidential informant, displayed a white rock substance that the confidential informant recognized as crack cocaine, and said that the deal "went good."

Katz's affidavit went on to say that the confidential informant accompanied him to 3025 Yost Place, where the officer observed the blue Cadillac parked in front of the residence. Katz conducted a records check that revealed that the Cadillac was registered to a Thomas Washington of 3001 Yost Place and also gave Washington's birthdate. Another records check revealed that a Thomas Washington had been arrested in 1998 in front of 3025 Yost Place for possession of an open container of alcohol, and had given 3025 Yost Place as his residence. A third check showed that a Thomas Washington, with the same birthdate as the Thomas Washington to whom the Cadillac was registered, had previously pleaded guilty to felony charges involving the distribution of and possession with intent to distribute cocaine.

Based on this affidavit, a District of Columbia Superior Court judge issued a warrant to search 3025 Yost Place. The next day, police officers executed the warrant and found crack cocaine, marijuana, drug paraphernalia, and various firearms in the residence.

Before trial, Washington moved to suppress the evidence seized by the police in the search. He argued that the affidavit did not present facts to support probable cause: the unwitting informant might well have been unreliable, there was no nexus between the drug sale in the car and the residence at 3025 Yost Place, and the information in the affidavit was or at least may have been stale. The district court denied the motion. After conviction and sentencing, Washington appealed.

4

\* \* \*

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause." U.S. CONST. amend. IV. To comply with that prescription, the affidavit in support of a request for a warrant must provide a "substantial basis for concluding that probable cause existed." *United States v. Warren*, 42 F.3d 647, 652 (D.C. Cir. 1994) (quoting *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983)). The task of a judge reviewing an affidavit for probable cause "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238.

Even assuming that Officer Katz's affidavit in this case did not support a finding of probable cause by the Superior Court judge, the government has available the good-faith exception of *United States v. Leon*. "[W]hen an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope," the exclusionary rule does not apply to the fruits of that search, even if the affidavit was in fact inadequate to establish probable cause. *Leon*, 468 U.S. at 920. "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." *Id*. at 921; see also *United States v. Gaston*, 357 F.3d 77, 80-81 (D.C. Cir. 2004).

Washington argues that the affidavit was so deficient that a police officer "could not have harbored an objectively reasonable belief in the existence of probable cause," as required for the application of *Leon*, and that suppression is therefore appropriate. See 468 U.S. at 926. We disagree.

First, Washington claims that, although the confidential informant had a proven record of reliability, his reliance on hearsay from the unwitting informant of unknown veracity (e.g., his statements that "Tom" lived at 3025 Yost Place and that the deal "went good") renders the tip inadequate. But the affidavit relies overwhelmingly on the confidential informant—whose reliability Washington does not question— and the records checks.

The confidential informant witnessed a man leave the house at 3025 Yost Place and spend several moments in a car with the unwitting informant, after which the unwitting informant showed the confidential informant what he recognized to be drugs. Officer Katz then independently verified that someone using the name Thomas Washington was closely associated with both the 3000 block of Yost Place and the car, having given 3001 Yost Place as his residence in registering the Cadillac and 3025 Yost Place on being booked for possession of an open container of alcohol.

As to the "unwitting informant," Washington points out that courts, in giving weight to the claims of an informant with no established reliability, commonly rely on the informant's provision of non-public predictive information that is later confirmed by the police. *Gates*, 462 U.S. at 241; *United States v. Laws*, 808 F.2d 92, 102 (D.C. Cir. 1986). Here, he says, the unwitting informant failed to provide such information.

But the unwitting informant did predict that he or she would purchase cocaine from someone named "Tom" in the vicinity of 3025 Yost Place, and indeed then proceeded to that address, entered a car registered to Thomas Washington with a person who emerged from 3025 Yost Place, and, after a brief time in the car, came out and presented the confidential informant with crack, claiming it was the fruit of the activity

in the car. The police corroborated the unwitting informant's identification of "Tom" through the confidential informant, whose reliability is conceded and who observed "Tom" leave the house and enter the car, and through records checks that revealed that a Thomas Washington owned the car and had previously given 3025 Yost Place as his address. See *Laws*, 808 F.2d at 102 (relying on unidentified informants who provided the suspects' names and what motel rooms they occupied—information confirmed by motel registration records). Thomas Washington's prior conviction for cocaine distribution also corroborated the unwitting informant's statement that he had bought crack from "Tom." See *id.* at 101 n.67, 103 (giving weight to a prior narcotics conviction). While of course the unwitting informant might have had the crack on hand before entering the car, the activities witnessed by the confidential informant seem at least highly suggestive of the predicted drug deal. Indeed, Washington offers no alternative explanation of the trip from house to car and the brief joint presence in the car.

Second, Washington asserts that the confidential informant's tip was stale: while the affidavit pinpoints the time of Officer Katz's conversation with the confidential informant as "within the last seventy-two hours," the affidavit fails to state when the alleged drug transaction itself occurred. According to Washington, this vagueness contravenes the requirement that the facts in the affidavit be recent enough to assure that probable cause existed when the search occurred. See *United States v. Grubbs*, 547 U.S. 90, 95 n.2 (2006).

Washington's contention appears to reflect precisely the sort of "hypertechnical reading" of the affidavit that we have rejected in favor of commonsense readings. See *Warren*, 42 F.3d at 653. The affidavit says that in "the course of the last seventy-two hours" the affiant spoke with the confidential informant, who said that he or she "had personal knowledge

that illegal drugs . . . were being possessed, stashed and sold" in and from 3025 Yost Place. Under normal rules for the sequence of tenses in English, that wording means that the asserted possession was going on at the time of the conversation. It would thus be "a fair reading, though not the only one," that in linking the claim of ongoing possession to a specific transaction, the informant located that transaction within or very close to the 72-hour period. *Gaston*, 357 F.3d at 81.

Because probable cause must exist at the time that law enforcement applies for a warrant, the freshness of the supporting evidence is critical. *Schoeneman v. United States*, 317 F.2d 173, 178 (D.C. Cir. 1963). Courts have sometimes been more "lenient" in evaluating the freshness of evidence in extended conspiracies than for single-incident crimes. *United States v. Webb*, 255 F.3d 890, 905 (D.C. Cir. 2001). Future affiants would therefore be well-advised to avoid temporal ambiguity in their description of drug transactions, particularly where only one sale is involved: "[W]hile the government ultimately prevails, its victory should be looked upon as a warning, not an invitation." *United States v. Cardoza*, 713 F.3d 656, 661 (D.C. Cir. 2013) (Brown, J., concurring).

Finally, Washington contends that the allegation of a single sale of crack cocaine inside a car parked outside 3025 Yost Place is inadequate to create probable cause to believe there were drugs in the house itself. But the affidavit points to general practices of drug traffickers enabling the affiant to draw such an inference. Officer Katz, after describing his extensive experience in drug enforcement, observed that drug traffickers "rarely keep on their person or immediately about them their entire supply of drugs" and instead "commonly retain much or most of their drug supply in their home or stash house." Furthermore, the confidential informant

personally saw the man exit the residence before entering the car and sitting with the unwitting informant, after which the unwitting informant displayed drugs to the confidential informant. Under these circumstances, an officer could certainly harbor *Leon*'s "objectively reasonable belief" that contraband or evidence would be found within. Indeed, in *United States v. Thomas*, 989 F.2d 1252 (D.C. Cir. 1993), we upheld a search of a person's house on 51st Street, Northeast on the basis of the person's sale of drugs in the 900 block of N Street, Northwest. *Id*. at 1255. The inferential link seems a lot tighter here.

At oral argument Washington's counsel repeatedly argued that a particular circumstance did not "necessarily" show or "establish" that a drug transaction had occurred or that there would be drugs in the house at 3025 Yost Place. Indeed, that is true even when we take all the relevant circumstances together. The affidavit and the confidential informant's tip on which it was based do not rule out innocent scenarios. It is surely possible that the "unwitting informant" had it in for Washington and used his or her own supply of drugs to fake the supposed transaction. And it is possible that Washington did not generally follow the modus operandi that Katz believed was prevalent in the drug market. But the probable cause test doesn't require that the facts assure certainty that contraband or evidence of a crime will be found—only a "fair probability." *Gates*, 462 U.S. at 238. And with a search warrant, as here, *Leon* requires only that the affidavit provide ground for the officer's "objectively reasonable reliance." 468 U.S. at 922.

The judgment of the district court is

*Affirmed*.