# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued September 15, 2015          Decided October 20, 2015

No. 14-3035

UNITED STATES OF AMERICA,
APPELLEE

v.

LEON DEANGELO BOYD,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:13-cr-00086-1)

*Gregory B. English*, appointed by the court, argued the cause and filed the brief for appellant.

*David P. Saybolt*, Assistant U.S. Attorney, argued the cause for appellee.  With him on the brief were *Vincent H. Cohen, Jr.*, Acting U.S. Attorney, and *Elizabeth Trosman*, *John P. Mannarino*, and *Thomas Swanton*, Assistant U.S. Attorneys.

Before: TATEL and PILLARD, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: A jury convicted appellant Leon Boyd of possession of ammunition by a felon in violation of 18 U.S.C. § 922(g)(1). On appeal, Boyd challenges the sufficiency of the evidence establishing his possession. Because the record contains sufficient evidence for the jury to have concluded beyond a reasonable doubt that Boyd possessed the ammunition, we affirm.

**I.**

On October 12, 2012, officers from the District of Columbia Metropolitan Police Department arrested Boyd for a crime unrelated to this case. The officers brought Boyd to an interview room where they read him his rights and proceeded to question him. When the officers took a break from interviewing Boyd, he asked to call his girlfriend, Yolanda Hairston, with whom he lived. The officers gave Boyd a cell phone and then left the room. Unbeknownst to Boyd, the interview room recording system captured his end of the conversation.

In a portion of the phone call the government later played for the jury, Boyd first explained, "I got to hurry up and get off this phone before the police come back." Gov't Ex. 23C at 00:06. He then gave Hairston the following instructions:

> And where [your uncle] at?

> Hey, give him that luggage, you know what I'm talking about? Hey, and it's a blue bag—you know that—you know my time piece, right? Listen to me, man. That time piece—listen. Will you—hello. Then shut up and listen then. I ain't tell you to think, just shut up and listen. The watch—can you hear me—do something with that. Just put it away, put it away, all right?

Gov't Ex. 23D at 00:55.

The following day, the police executed a search warrant at Boyd's residence, which he shared with Hairston, her uncle, her children, and her two brothers. Hairston's mother, the owner of the home, also stayed there part time. Although Boyd, Hairston, and her children were the only people living in their second-floor room at the time, the door had no functioning lock, and other residents of the house periodically entered to use a PlayStation and a television. Additionally, Hairston's sister had previously lived in the room, and some of her personal property remained there.

One of the officers went upstairs to search the bedroom. In a gym bag the officer found a smaller blue bag containing bullets. The government indicted Boyd for possession of ammunition by a felon in violation of section 922(g)(1).

After the government presented its evidence and then again at the close of evidence, Boyd moved for a judgment of acquittal, arguing that the record contained insufficient evidence for the jury to conclude that he possessed the ammunition. *See* Fed. R. Crim. P. 29. The district court denied the motion, and the jury convicted Boyd. He now appeals the conviction, once again challenging the sufficiency of the evidence establishing his possession. We review a challenge to the sufficiency of the evidence de novo. *United States v. Eiland*, 738 F.3d 338, 356 (D.C. Cir. 2013).

## II.

When assessing the sufficiency of the evidence, we ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Possession of ammunition by a felon under section 922(g)(1) has three essential elements: (1) the defendant must have knowingly possessed the ammunition; (2) the

ammunition must have been transported in or affected interstate commerce; and (3) at the time of possession, the defendant must have previously been convicted of a felony. *United States v. Bryant*, 523 F.3d 349, 354 (D.C. Cir. 2008). Because the parties stipulated that the second and third elements were satisfied, only the first element—Boyd's possession—is at issue here.

The government argues, as it did at trial, that Boyd constructively possessed the ammunition found in his bedroom. To establish constructive possession, the government must prove that Boyd "knew of, and was in a position to exercise dominion and control over, the [ammunition]." *United States v. Littlejohn*, 489 F.3d 1335, 1338 (D.C. Cir. 2007) (quoting *United States v. Byfield*, 928 F.2d 1163, 1166 (D.C. Cir. 1991)) (internal quotation marks omitted). According to the government, the location of the ammunition in Boyd's bedroom was by itself sufficient to establish Boyd's constructive possession.

In this circuit, however, the government may not establish a defendant's constructive possession of concealed contraband solely by showing that the defendant occupied the room containing the contraband if, as here, the defendant shared the room with others. *United States v. Harris*, 515 F.3d 1307, 1310 (D.C. Cir. 2008) (explaining that in joint-occupancy settings where the contraband is concealed from view, the government must present some evidence of "*knowing* dominion and control" because "a contrary view could unfairly sweep up unwitting roommates or housemates"). It is true, as the government points out, that in *United States v. Morris* we stated that "[t]he inference that a person who occupies an apartment has dominion and control over its contents applies even when that person shares the premises with others." 977 F.2d 617, 620 (D.C. Cir. 1992). We have made the same point in other cases. *See, e.g.*,

*Littlejohn*, 489 F.3d at 1339–40; *United States v. Dykes*, 406 F.3d 717, 721 (D.C. Cir. 2005). But the records in those cases either contained other evidence from which the jury could have inferred the defendant's constructive possession, *see, e.g.*, *Littlejohn*, 489 F.3d at 1339 (citing Littlejohn's evasive conduct as additional evidence of his constructive possession), or allowed the jury to conclude the defendant was in fact the room's sole occupant, *see, e.g.*, *Morris*, 977 F.2d at 620 ("Other than appellant's testimony, . . . which the jury was permitted to disbelieve, there was no evidence that anyone other than appellant lived in the apartment . . . ."); *Dykes*, 406 F.3d at 722 ("[T]here was sufficient evidence in this case for a reasonable juror to conclude that Dykes did not share the bedroom."). These cases are therefore consistent with the notion that when the defendant shares the room containing the concealed contraband, the government must present additional evidence of constructive possession.

The record in this case contains such additional evidence. Most important, before the grand jury Hairston participated in the following colloquy with the prosecutor:

Q: And what was in that blue bag?
A: Bullets.
Q: And who did that blue bag belong to?
A: Leon [Boyd].

Trial Tr. 71 (Mar. 19, 2014). The government used this testimony at trial to impeach Hairston after she testified that she did not know who owned the blue bag. *Id.* at 40–41. Her testimony also came in as substantive evidence. *See* Fed. R. Evid. 801(d)(1)(A); *Barwick v. United States*, 923 F.2d 885, 888 (D.C. Cir. 1991) (explaining that prior inconsistent testimony given under oath is admissible "not only for impeachment purposes but also as substantive evidence"). Based on Hairston's statement that Boyd was the owner of the bag containing the bullets, the jury could reasonably have

concluded that Boyd constructively possessed the ammunition.

Providing still further support for the jury's verdict, the government points to Boyd's phone call from the police interview room. After saying he had to "hurry up and get off this phone before the police [came] back," Boyd told Hairston to get rid of a watch, a piece of luggage, and a blue bag. A police detective testified that a watch and luggage, but not a blue bag, were relevant to the investigation of the unrelated crime for which the officers arrested Boyd. Since two of the three items Boyd mentioned were relevant to a criminal investigation, the jury could reasonably have concluded that Boyd called Hairston to conceal contraband. And because the blue bag had nothing to do with the officers' separate investigation, the jury could have concluded, again reasonably, that it was the one that contained the bullets.

## III.

For the foregoing reasons, we affirm.

*So ordered.*