# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued March 10, 2017          Decided June 23, 2017

No. 14-3064

UNITED STATES OF AMERICA,
APPELLEE

v.

HAROLD A. DORMAN,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:13-cr-00334-1)

*Tony Axam Jr.*, Assistant Federal Public Defender, argued the cause for appellant. With him on the brief was *A.J. Kramer*, Federal Public Defender.

*James A. Ewing*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Elizabeth Trosman*, *Suzanne Grealy Curt*, *Anthony Scarpelli*, and *George P. Eliopoulos*, Assistant U.S. Attorneys.

Before: ROGERS, MILLETT and PILLARD, *Circuit Judges*.

ROGERS, *Circuit Judge*: The principal question in this appeal is whether the government met its burden to show beyond a reasonable doubt that Harold A. Dorman

constructively possessed PCP seized from the laundry room of his mother's home. Constructive possession of unlawful controlled substances is an expansive concept that this court has held requires a showing of more than mere residence in a jointly occupied home where drugs and guns are found in generally accessible areas and are not in plain view. Because Dorman's constructive possession of a gun and ambiguous apology to his mother fail to fill the evidentiary void, we reverse in part and remand for resentencing.

## I.

The seizure of the drugs and firearms from Dorman's mother's home resulted from an investigation of a robbery at a Kay Jewelers store in Maryland on October 22, 2013. Two diamond rings were taken from the fingers of a sales clerk, and the robber was captured on video getting into a white Dodge Charger. The car was identified as a rental car on loan to Dorman's father. Dorman matched the physical description of the robber, and was known by law enforcement to be facing charges in Pennsylvania for the attempted robbery of a jewelry store. Another videotape showed Dorman exiting the Dodge Charger at a 7-11 convenience store in Maryland two days after the robbery. The Dodge Charger was also spotted by FBI Special Agent Catherine Hanna several days before the robbery in an area she knew to be frequented by Dorman, with whom she had previous interactions. With a GPS tracking system, the Dodge Charger was found parked near 2317 Chester Street, S.E., Washington, D.C., which public records (including a prior arrest record) listed as Dorman's address. FBI agents subsequently observed the car parked across the street from that address.

The home at 2317 Chester Street, S.E. consisted of two floors and a basement. The basement, which was not locked off from the main floor, included a family room and closet at the

base of the stairs, and a laundry room and a bedroom off a hallway; it also had an external exit at the rear. The entrance to the basement bedroom was around a corner from the laundry room. The bedroom contained men's sneakers and clothing, as well as judicial court papers in Dorman's name, and was decorated with a painting of him playing football.

Pursuant to the execution of a search warrant for 2317 Chester Street, S.E., law enforcement officers seized an array of contraband unrelated to the Kay Jewelers robbery: (1) a Glock 9-millimeter handgun loaded with a 30-round extended magazine hidden underneath a couch cushion in the living room on the first floor; (2) a one-ounce vial of PCP on the living room floor either inside or behind a vase, among other drug paraphernalia (approximately fifty glass vials in a large plastic bag, and scales and small plastic baggies in a baby formula container) elsewhere in the room; (3) an empty gun box for a Glock .40 caliber handgun on the basement stairs; (4) a loaded Ruger 9-millimeter pistol wedged between the mattress and box spring of the bed in the basement bedroom, with a digital scale, plastic baggies, and boxes of .40 caliber Smith and Wesson ammunition nearby; (5) a 15.2 ounce Tropicana juice bottle filled to the brim with PCP on the floor of the basement laundry room; and (6) a trash bag containing fifty or more empty prescription pill bottles for oxymorphone underneath a blanket in the hallway in the basement. Although the search did not produce the stolen rings, packaging and price tags for jewelry from other stores was found in the home.

Dorman was indicted on three counts: Count 1, unlawful possession with intent to distribute 100 grams or more of PCP, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(A)(iv); Count 2, unlawful possession of a firearm or ammunition by a person convicted of a felony, in violation of 18 U.S.C. § 922(g)(1); and Count 3, using, carrying, and possessing a firearm during a drug

trafficking offense, in violation of 18 U.S.C. § 924(c)(1). The district court denied his motion to suppress the items seized during the search.

At trial, Dorman's mother appeared as a government witness. She testified that her son stayed in many places, but conceded to having told the grand jury that 2317 Chester Street, S.E. was his "home base." Trial Tr. 107 (July 9, 2014). She had "fixed up" the basement bedroom for him, *id.* at 122, and identified as his some of the items in the room. She also explained that when at her home, although he did not always sleep in the basement bedroom, to her knowledge no one else slept there. Multiple individuals had keys to the home, including Dorman's father and Cleavan Hill, a family friend who lived at the home; the son of Dorman's mother's boyfriend also had a key and temporarily lived at the home in 2012, but had apparently lost the key since then. Only Dorman and his mother had keys to the basement bedroom, although she admitted on cross-examination that the door "was open all the time." *Id.* at 151. Dorman, his mother, Hill, the mother's boyfriend, and possibly the boyfriend's son did laundry in the basement laundry room. Various other individuals also frequented 2317 Chester Street, S.E., including Dorman's friends regardless of whether he was there at the time. Hill testified that on several occasions he had let people in the home at Dorman's request when no one else was there.

The jury found Dorman guilty as charged, and the district court denied his motions for acquittal and a new trial. Considering Counts 1 and 2 together, the district court sentenced Dorman to concurrent terms of seventy months' imprisonment on each of these counts, and to a consecutive term of sixty months' imprisonment on Count 3, and thirty-six months' supervised release. Dorman appeals, challenging his convictions on three grounds, of which only his sufficiency

challenge warrants extended discussion.

## II.

"Criminal possession . . . may be either actual or constructive." *United States v. Alexander*, 331 F.3d 116, 127 (D.C. Cir. 2003). Constructive possession is a potentially expansive concept, and this court has limited its reach. The government must prove beyond a reasonable doubt that "the defendant knew of, and was in a position to exercise dominion and control over, the contraband." *United States v. Littlejohn*, 489 F.3d 1335, 1338 (D.C. Cir. 2007) (quoting *United States v. Byfield*, 928 F.2d 1163, 1166 (D.C. Cir. 1991)); *see United States v. Staten*, 581 F.2d 878, 883–84 (D.C. Cir. 1978). This avoids ensnaring "incidental bystander[s]" who happen to be in the wrong place at the wrong time. *United States v. Pardo*, 636 F.2d 535, 549 (D.C. Cir. 1980). The court has addressed the sufficiency of the evidence of dominion and control in three circumstances: First, the court has held the evidence of constructive possession is sufficient when contraband is found in a home or bedroom where the defendant was the sole occupant. *See, e.g.*, *United States v. Dykes*, 406 F.3d 717, 722 (D.C. Cir. 2005); *United States v. Morris*, 977 F.2d 617, 620 (D.C. Cir. 1992). Second, where the defendant shares a home or bedroom with other persons, the court has held the evidence of dominion and control is sufficient only where there was additional evidence linking the defendant to the contraband. *See, e.g.*, *United States v. Boyd*, 803 F.3d 690, 693 (D.C. Cir. 2015); *United States v. Walker*, 99 F.3d 439, 441 (D.C. Cir. 1996). Third, where law enforcement encountered the defendant in close proximity to the contraband, the court has held the evidence of constructive possession was sufficient where there is "evidence of some other factor — including connection with [contraband], proof of motive, a gesture implying control, evasive conduct, or a statement indicating involvement in an

enterprise." *Alexander*, 331 F.3d at 127 (quoting *United States v. Moore*, 104 F.3d 377, 381 (D.C. Cir. 1997)). Here, the government sought to establish Dorman's possession of the gun in the basement bedroom under the first line of cases and his possession of the PCP under the second.

Dorman contends that the evidence linking him to the drugs and guns was insufficient because he was not present when the items were seized and it was unreasonable to infer beyond a reasonable doubt that he constructively possessed the items discovered in areas of the home that were accessible to many individuals. He was neither the lessee nor owner of 2317 Chester Street, S.E., and there was no evidence of mail addressed to him at that address; paperwork from his arrest in Pennsylvania in the basement bedroom listed 142 Yuma Street, S.E., Washington, D.C., as his address. The evidence neither showed that all of the items in the basement bedroom belonged to him, nor how his belongings had come to rest there or how long the seized items had been there. He points to this court's precedent holding that an occasional or even frequent occupant of premises is not presumed to possess everything contained at those premises, *see United States v. Zeigler*, 994 F.2d 845, 848 (D.C. Cir. 1993), and contrasts the evidence in his case to that in *Walker*, 99 F.3d at 441, where at the time of the search and seizure the defendant was "surrounded by drug paraphernalia in the open" and drugs were "all over the floor" of a neighboring room. In Dorman's view, his case is more like *United States v. Thorne*, 997 F.2d 1504, 1510 (D.C. Cir. 1993), where there was non-exclusive use of a bedroom and no drugs or drug paraphernalia were in plain view. The government rejects the notion that any of these cases require reversal because, in its view, when considered together the evidence of Dorman's primary occupancy of the basement bedroom, the combination of drugs and guns in the home, including some readily apparent drug paraphernalia, and his mother's testimony that he phoned

and told her "I'm sorry" while the search warrant was being executed made it reasonable for the jury to conclude that Dorman constructively possessed the drugs and guns.

This court must "view[] the evidence in the light most favorable to the prosecution," *Boyd*, 803 F.3d at 692 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)), not distinguishing between direct and circumstantial evidence, and "giving full play to the right of the jury to determine credibility, weigh the evidence and draw justifiable inferences of fact," *United States v. Vega*, 826 F.3d 514, 522 (D.C. Cir. 2016) (quoting *Dykes*, 406 F.3d at 721). The government fails to meet its burden of proof, however, if the evidence leaves a jury to "base a verdict on mere speculation." *United States v. Gaskins*, 690 F.3d 569, 578 n.3 (D.C. Cir. 2012) (quoting *United States v. Teffera*, 985 F.2d 1082, 1088 (D.C. Cir. 1993)).

**A.**

The evidence regarding the contents of the basement bedroom and his mother's testimony established that Dorman was the sole occupant of the basement bedroom, even if he did not have exclusive control inasmuch as his mother stored some belongings there. *See Morris*, 977 F.2d at 620; *Dykes*, 406 F.3d at 722. It also established that he exercised dominion and control over the bed where the gun was found. *See United States v. Edelin*, 996 F.2d 1238, 1241 (D.C. Cir. 1993). Dorman's mother testified that, as far as she observed, Dorman alone slept in the room and photo exhibits showed his personal papers and effects next to the bed. Although Dorman was in police custody when the search warrant was executed a couple of hours later, he was home the night before, which narrowed the time when someone else could have stashed the gun in the basement bedroom without it being discovered by him. *Cf. United States v. Johnson*, 592 F.3d 164, 168–69 (D.C. Cir. 2010). We therefore affirm his conviction on Count 2, unlawful

possession of ammunition or a firearm by a convicted felon, under 18 U.S.C. § 922(g)(1), based on his constructive possession of the gun found in the basement bedroom and the parties' stipulation that Dorman had a prior felony conviction. *See United States v. Bryant*, 523 F.3d 349, 354 (D.C. Cir. 2008).

**B.**

The evidence of Dorman's constructive possession of the PCP is more attenuated. "The natural inference is that those who live in a house know what is going on inside, particularly in the common areas." *United States v. Jenkins*, 928 F.2d 1175, 1179 (D.C. Cir. 1991). But the court has emphasized the importance of distinguishing between drugs found in plain view in a common area and those that are hidden. *See United States v. Harris*, 515 F.3d 1307, 1310 (D.C. Cir. 2008). "[A] contrary view could unfairly sweep up unwitting roommates or housemates and subject them to the harsh criminal punishments associated with drug crimes." *Id.* Constructive possession of contraband found in a shared space in the defendant's home can be shown only where it was kept in plain view, *see, e.g.*, *Jenkins*, 928 F.2d at 1179; *Harris*, 515 F.3d at 1310; *United States v. Davis*, 562 F.2d 681, 685 (D.C. Cir. 1977), or where there is additional evidence, including the defendant's presence and conduct at the time of the search or an item in his control, linking him to the contraband, *see, e.g.*, *Johnson*, 592 F.3d at 168–69; *Jenkins*, 928 F.2d at 1179; *see also Thorne*, 997 F.2d at 1510–11.

There is no evidence that PCP or PCP drug paraphernalia were in plain view in the common areas of Dorman's mother's home. As described by Agent Hanna, the seizing officer, neither container of PCP was in plain view. The PCP in the laundry room was on the floor, on the right side of the washing machine, and Agent Hanna described it as not "necessarily" visible from the front upon approach. Trial Tr. 9 (July 9, 2014). Similarly,

Agent Hanna testified that the PCP in the living room was in a vial found either inside or behind a floral vase sitting on the floor beside the television, but not in "plain view." Trial Tr. 179 (July 8, 2014). "[A] large plastic bag containing smaller glass vials with black screw tops" was found on a chair in the living room, Trial Tr. 185 (July 8, 2014), but neither trial testimony nor the government's supplemental appendix shows that the vials were visible to a passerby. Even assuming the empty prescription pill bottles found in the basement hallway could be used to transport PCP, they were in a trash bag covered by a blanket.

Nor was Dorman physically present or behaving suspiciously during the search of his mother's home. That absence "magnifies the importance of these evidentiary holes in the government's case." *United States v. Lawrence*, 471 F.3d 135, 142 (D.C. Cir. 2006).

Nor did the evidence in Dorman's basement bedroom link him to the PCP. The government points to the plastic baggies and a digital scale found in the basement bedroom, Appellee Br. 50, but the government's expert testified that PCP is distributed in glass or plastic bottles, not plastic baggies, and is measured by bottle size rather than by weight. The government also points to the gun in Dorman's bedroom mattress, relying on cases upholding constructive possession convictions on the theory that "drugs and guns go together." *Johnson*, 592 F.3d at 169 (quoting *Jenkins*, 928 F.2d at 1179); *see United States v. McLendon*, 378 F.3d 1109, 1113 & n.4 (D.C. Cir. 2004). The link between guns and drugs is an example of a "plus factor[]" that, when "'coupled with proximity,'" can support a finding of constructive possession. *United States v. Booker*, 436 F.3d 238, 242 (D.C. Cir. 2006) (quoting *Alexander*, 331 F.3d at 127). Here there was no such close physical proximity between Dorman and the PCP. *Compare In re Sealed Case*, 105 F.3d

10

1460, 1464 (D.C. Cir. 1997) *with Booker*, 436 F.3d at 242–43, *and Moore*, 104 F.3d at 381.  The gun in the basement bedroom, then, was not a "plus factor" to Dorman's proximity to the PCP in the laundry room; it was the primary connection.  Relying on the evidence of his constructive possession of the gun in his basement bedroom to support his constructive possession of PCP elsewhere would stretch the "drugs and guns" observation beyond its common usage, piling inference upon inference.  *Cf. Pereira v. United States*, 347 U.S. 1, 16 (1954) (Minton, J., concurring in part and dissenting in part).  In *Jenkins*, 928 F.2d at 1179, where ammunition was found in the defendant's private bedroom and drug paraphernalia and remnants were found in plain view in common areas, the court held that the evidence was "just barely" sufficient to prove constructive possession of drugs.  The government cites no case and the court is aware of none holding that constructive possession of a gun in one room by itself can prove constructive possession of drugs in a separate common area.  *Cf. Johnson*, 592 F.3d at 169; *United States v. Dunn*, 846 F.2d 761, 764 (D.C. Cir. 1988).  The absence of case law is not surprising:  Because there are many lawful reasons to have a gun, a court cannot lightly infer that a gun is being used to protect a drug stash.

The government suggests that the gun, with its handle protruding from the mattress, "was positioned for easy access should someone intrude into the bedroom, so as to protect the major stash of PCP around the corner in the laundry room." Appellee Br. 44.  This theory is undermined by "the spatial separation between the defendant, the gun, and the drugs." *Booker*, 436 F.3d at 242–43.  In *Booker*, the court held that "a rational juror could reasonably conclude Booker constructively possessed the gun lying next to his drugs," *id*. at 243, rather than in a different room as here.  Additionally, Booker was "never more than 50–80 feet away," from the contraband.  *Id.* at 242. The evidence here is more akin to that in *In re Sealed Case*, 105

F.3d at 1464–66, where the court held that the evidence failed to show the defendant, who was in a restaurant, constructively possessed a gun found under the driver's seat of a parked car from which his brother sold drugs; even assuming the defendant knew of the gun and was a joint participant in an ongoing drug trafficking enterprise, the evidence failed to show the defendant was "in a position to exercise dominion and control over the gun," *id.* at 1464. So, too, here as the PCP was found in common areas of the home beyond Dorman's presence or control.

Of course, the evidence showed that his mother's home, which she described as Dorman's "home base," contained drugs and drug paraphernalia in several rooms, and Hill's description of visitors at Dorman's request lends weight to a reasonable jury finding that unlawful drug activities were going on in the mother's home. But evidence of participation in an ongoing drug business by itself would not ordinarily support a finding of constructive possession, *see id.*, and here, despite what the jury could reasonably infer was Dorman's frequent presence in his mother's home, there was no evidence that Dorman exercised knowing dominion and control over the PCP. The stipulation informing the jury that Dorman had a prior felony conviction did not identify the offense. Agent Hanna testified there was no tangible evidence, such as fingerprints or DNA evidence, connecting Dorman to the contraband found in 2317 Chester Street, S.E. Fingerprints recovered from the prescription pill bottles found in the basement hallway matched those of Khalid Davis and Ibrahim Ahmed Adam Mohamed, and while Davis may have had a phone contact with Dorman, no evidence connected either Davis or Mohamed to the PCP or the guns. Too many other individuals had access to the home whose activities were not specifically described. Suspicion, much less speculation, is insufficient to demonstrate that the government has met its burden of proof. *See Gaskins*, 690 F.3d at 578 n.3;

*United States v. Salamanca*, 990 F.2d 629, 638 (D.C. Cir. 1993).

Nor does Dorman's apology to his mother fill the evidentiary gap. "The trouble with absence of evidence is that it is consistent with *any* hypothesis." *Pardo*, 636 F.2d at 549 (quoting *United States v. Holland*, 445 F.2d 701, 703 (D.C. Cir. 1971)) (emphasis in original). Dorman had phoned his mother while the search warrant was being executed. According to her, she told him the police were "all over my house" and that she was "upset and yelling about the situation." Trial Tr. 137 (July 9, 2014). Dorman responded "Ma, I'm sorry." *Id*. at 143. The government suggests this testimony was "devastating" to Dorman because it was an admission the contraband was his. Appellee Br. 46. Although "I'm sorry" may be a capacious statement, the evidence never established what he was sorry for or even that he knew drugs had been discovered in his mother's home. The record does not indicate when during the search the phone call occurred. Dorman's mother was outside "for two hours in the hot sun" during the search, Trial Tr. 156 (July 9, 2014), leaving unclear whether she knew of the drugs when he phoned. Theoretically, Dorman could have been apologizing because he brought the PCP into her home, but it is at least as likely that he could have been apologizing because of his robbery at Kay Jewelers, for which he had just been arrested, or just to calm down his mother who was extremely upset. Dorman's statement is not in the nature of a vague expression of guilt that can only be understood as a confession to one particular criminal act, *see United States v. Brinson-Scott*, 714 F.3d 616, 624 (D.C. Cir. 2013), and leaves the jury to speculate about what he meant.

In sum, the government's attempt to demonstrate there was sufficient evidence of Dorman's constructive possession of the PCP fails under the court's precedent. True, his bedroom was around the corner from the laundry room, a gun was found in his

bedroom, and the home contained some non-PCP drug paraphernalia in plain view, but multiple individuals had a key or otherwise had access to the home when Dorman was not present and no tangible evidence connected him to the PCP, which was not found in plain view. Viewed cumulatively in the light most favorable to the government, the evidence is equivocal about Dorman's relationship to the PCP and his ability to exercise dominion and control over it, and is thus insufficient to show, under Count 1, that he constructively possessed 100 grams or more of PCP with intent to distribute. *See United States v. Douglas*, 482 F.3d 591, 596–97 (D.C. Cir. 2007). This also means, notwithstanding the sufficiency of the evidence that Dorman constructively possessed a firearm under Count 2, that there was insufficient evidence of a drug trafficking offense to support his Section 924(c) conviction under Count 3. *See United States v. Kelly*, 552 F.3d 824, 832 (D.C. Cir. 2009). We therefore reverse the judgment of conviction on Counts 1 and 3.

## III.

Dorman's evidentiary and constitutional challenges to his convictions — that the affidavit for the search warrant was insufficient to establish probable cause and the district court unduly limited his counsel's cross-examination of his mother — do not require reversal of his conviction under Count 2, unlawful possession of a firearm by a convicted felon.

## A.

"The task of a judge reviewing an affidavit for probable cause 'is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Washington*, 775 F.3d 405, 407 (D.C. Cir. 2014)

(quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Under *Franks v. Delaware*, 438 U.S. 154 (1978), to challenge the validity of a search warrant affidavit, "the defendant must show that (1) the affidavit contained false statements; (2) the statements were material to the issue of probable cause; and (3) the false statements were made knowingly and intentionally, or with reckless disregard for the truth." *United States v. Richardson*, 861 F.2d 291, 293 (D.C. Cir. 1988). This reasoning applies as well to "material omissions" from a search warrant affidavit. *United States v. Johnson*, 696 F.2d 115, 118 n.21 (D.C. Cir. 1982) (quoting 2 W. LAFAVE, SEARCH AND SEIZURE § 4.4 (Supp. 1982)). In this context, "material" means that the "inclusion [of the omitted information] in the affidavit would defeat probable cause." *United States v. Spencer*, 530 F.3d 1003, 1007 (D.C. Cir. 2008) (quoting *United States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990)). Our review of the district court's legal conclusions is *de novo* and of its factual findings is for clear error. *United States v. Glover*, 681 F.3d 411, 417 (D.C. Cir. 2012).

In contending that the district court erred as a matter of law and fact in denying his motion to suppress the evidence seized from his mother's home, Dorman points out that the affidavit omitted any mention of his non-identification by the Kay Jewelers sales clerk from whose hand the rings were taken. In Dorman's view, the district court erred as a matter of law by not considering whether there was probable cause had the omitted information been included in the affidavit, and its error was "exacerbated" when it found that the omission was "'not that relevant.'" Appellant Br. 40 (quoting Mot. H'g Tr. 121 (Jun. 25, 2014)). There is no record basis to conclude that inclusion of the sales clerk's uncertainty when presented with the photo array would have "negate[d] probable cause." *Spencer*, 530 F.3d at 1008. Even viewing the omitted non-identification as a material omission, probable cause for the search did not rise or fall on the

identification of Dorman as the robber; rather the link was between the Dodge Charger and the robbery, Dorman and the Charger, and Dorman and 2317 Chester Street, S.E. *See* Part I, *supra*. Dorman speculates that law enforcement officers "fear[ed]" inclusion of the sales clerk's statement "would jeopardize a probable cause finding." Appellant Br. 41. MPD Detective Scott Brown, who prepared the affidavit, testified that he chose not to include the sales clerk's statement in his affidavit because "it didn't help the search warrant" because the sales clerk was uncertain, but it also "didn't hurt the search warrant" because the clerk said Dorman's photograph had some resemblance to the robber. Mot. H'g Tr. 91. Dorman's rank speculation is far from the "preponderance of the evidence" required to demonstrate that the officer knowingly or recklessly omitted this statement, much less overcome the district court's contrary finding on clear error review. *United States v. Cardoza*, 713 F.3d 656, 658 (D.C. Cir. 2013).

Dorman also fails to show plain error as a result of "the false statement" in the affidavit that the attempted robbery in Pennsylvania involved a rental car when, in fact, it involved a car borrowed from its rightful owner. Appellant Br. 39; *see United States v. Williams*, 773 F.3d 98, 105 (D.C. Cir. 2014). The district court dismissed this statement as a "simple error," without objection from Dorman, Mot. H'g Tr. 121, and Dorman points to no evidence that Detective Brown knowingly or recklessly included this information in his affidavit, *see Richardson*, 861 F.2d at 293.

**B.**

The district court "enjoys broad discretion to control cross-examination," *United States v. Hite*, 769 F.3d 1154, 1171 (D.C. Cir. 2014), but its discretion is not unbounded. The district court "may not restrict the right of cross-examination by the defense on a matter brought out before the jury on direct until

that right has been 'substantially and fairly exercised.'" *United States v. Pugh*, 436 F.2d 222, 225 (D.C. Cir. 1970) (quoting *Lindsey v. United States*, 133 F.2d 368, 369 (D.C. Cir. 1942)). Where the district court "deprives a defendant of a fair trial" by violating the defendant's constitutional rights, *United States v. Lathern*, 488 F.3d 1043, 1046 (D.C. Cir. 2007), the government must show that the error was "harmless beyond a reasonable doubt," *Chapman v. California*, 386 U.S. 18, 24 (1967); *accord Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986).

Dorman contends that the district court's limitations on cross-examination of his mother violated his right under the Confrontation Clause of the Sixth Amendment and his Fifth Amendment Due Process right to present a complete defense. The limitations on defense counsel's cross-examination concerned whether other individuals had access to Dorman's mother's home, including for the purpose of doing their laundry in the basement. In response to the prosecutor's objection that "we don't know what the time period is," Trial Tr. 147 (July 9, 2014), the district court directed defense counsel "to give times and . . . to be more specific" because otherwise "there's no foundation for [the question,]" *id*. at 148. Thereafter, on three additional occasions, one apparently *sua sponte*, the district court cut off defense counsel's questions about others having access. Instructing defense counsel to be more specific, the court allowed counsel to inquire whether Dorman had visitors at the home during the six months prior to the search.

Given the government's constructive possession theory for Dorman's prosecution, the defense was entitled to some leeway in attempting to establish that others had frequent or regular access to his mother's home. His mother was a key government witness, and the evidence Dorman's counsel sought to obtain was a key part of the defense. As this court has stated, "there should be great latitude for cross-examination on issues raised

in direct testimony." *United States v. Stock*, 948 F.2d 1299, 1302 (D.C. Cir. 1991). Ambiguities can be corrected on redirect. The court need not decide, however, whether the district court's limitations on cross-examination impermissibly violated Dorman's Fifth and Sixth Amendment rights because if error, it was harmless beyond a reasonable doubt as to his conviction under Count 2. The evidence showed that only Dorman slept in the basement bedroom and that he was present in his mother's home the night before the search warrant was executed. Dorman suggests that further cross-examination could have produced evidence that others may have possessed the PCP, and that evidence would have raised an inference they possessed the firearms and ammunition to protect their drugs. Such an attenuated inference lacks probative force because the gun found in the basement bedroom was visible to its occupant and easily accessible to someone lying in bed. As the court observed in *Walker*, 99 F.3d at 441, "it would be rather illogical for a user of the room to leave any material in the bedroom of the primary occupant under the assumption that such material would remain undetected by the primary occupant — at least absent a showing that the material was hidden in places not normally utilized." So understood, no reasonable juror could find that a guest would leave a gun visible in someone else's bed to protect a stash of drugs found elsewhere in a generally accessible part of the home.

Accordingly, we affirm Dorman's conviction on Count 2, reverse his convictions on Counts 1 and 3, and remand the case to the district court for resentencing.